# Richmond.

## JEFFRIES V..SOUTHWEST VA. IMPROVEMENT CO.

### March 10th, 1892.

1. FRAUD—*Proof—Alleger.*—Fraud must be clearly and distinctly proved by the alleger thereof, and is never presumed.
2. LACHES—*Relief.*—Mere lapse of time a transaction has been allowed to stand, may render it unimpeachable in equity. What constitutes *laches* depends upon the circumstances of the particular case. One cannot be permitted to remain passive, prepared to confirm or repudiate the transaction according to what may turn out to be for his advantage.
3. CHOSES IN ACTION—*Assignable—Exception.*—Choses in action are commonly assignable even at law; but an assignment of a mere right of action to procure a transaction to be set aside on the ground of fraud is not permitted.
4. DEEDS—CANCELLATION—*Case at bar.*—In the case here, upon the facts set forth in the opinion, there being no evidence to sustain the charge of fraud, but, on the contrary, it appearing that the complainants themselves were guilty of fraud;

HELD :

There was no error in the refusal to cancel the deeds and the decree alleged to have been fraudulently procured.

Argued at Wytheville. Decided at Richmond. Appeal from decree of circuit court of Tazewell county, rendered February 26th, 1889, in vacation, in the consolidated causes of Charles E. Jeffries and others against the Southwest Virginia Improvement Company and others, and of Albert Jeffries against the said company. The decree being adverse to the complainants, they appealed. Opinion states the case.

*F. S. Blair* and *Daniel Trigg*, for appellants.

*May & May*, *Henry & Graham*, *J. H. Fuller* and *J. S. Clark*, for appellees.

FAUNTLEROY, J., delivered the opinion of the court.

This is an appeal from a final decree of the circuit court of Tazewell county, rendered February 26th, 1889, in vacation, in the consolidated causes of Charles E. Jeffries and others, complainants, against the Southwest Virginia Improvement Company and others, defendants, and of Albert Jeffries, complainant, against the said company, defendant, in chancery. The said decree complained of dismissed both of the said bills.

The object of these two suits (virtually one) was to annul a decree of the circuit court of Tazewell county, rendered at the May term, 1883, in the chancery cause of Elizabeth E. Jeffries, by William T. Moore, her next friend, against John J. Jeffries and others; and also to annul and declare void a deed made by the complainants, Charles E. Jeffries, Henry Saddler and wife, Sarah Ann Saddler, made April 22d, 1882, by which they conveyed all their right, title and claim in and to two tracts or parcels of land lying partly in McDowell county, West Virginia, and partly in Tazewell county, Virginia, containing, together, 780 acres, upon the ground and charge of fraud.

The decree sought to be annulled was rendered in May, 1883, and was never appealed from; and the deed asked to be vacated was made April 22d, 1882, and duly recorded in the clerk's office of Tazewell county; while these suits to set them aside were bought in 1887. On the 1st day of March, 1861, Jacob Francisco and Mary, his wife, for the consideration of $100, granted and conveyed unto John J. Jeffries in fee, two certain tracts or parcels of land, situate on the dividing ridge between Laurel Creek, the waters of the Bluestone, and the Tug river, lying partly in the county of McDowell and partly

in the county of Tazewell in Virginia, and containing, respectively, 440 acres and 340 acres. This is the land in controversy. On the 5th day of December, 1865, the said John J. Jeffries, by deed of that date, conveyed the said tract of 440 acres, and the said tract of 340 acres to his then four chilren, viz.: Charles E. Jeffries, Albert Jeffries, George S. Jeffries and Sarah Ann Jeffries, then infants; also all his personal property, for no alleged consideration. Albert Jeffries, one of the appellants here, alleges in his bill " his father, J. J. Jeffries, having previously become involved in a serious difficulty in the county of McDowell, together with the fear of death, conveyed the said land to your orator, his sister, Sarah Ann, since and now Mrs. Henry Saddler, and to his two brothers, Charles E. and George (the latter subsequently died unmarried, and his share reverted to his father)." " He conveyed to his children, thinking he might die, * * * and to avoid any pecuniary liabilities in consequence of the difficulty he had gotten into." " It is fallacious that your orator's father is a man of weak intellect. He was quarrelsome, cunning, and not as honest as strict morality requires one to be." On the 20th day of April, 1881, John J. Jeffries and Elizabeth E. Jeffries, his wife, gave to John Graham, Jr., an option on all the coal and minerals in and on the said 340 and 440-acre tracts, together with three other tracts or parcels of land not in controversy; the said John Graham, Jr., to have twelve months from the date of the the said option, to dig upon, examine and explore said land for minerals, and in addition thereto sixty days to complete the bargain by paying for the said minerals $1.25 per acre; the money to be paid to Elizabeth J. Jeffries, as the land was bought with her means. Subsequently, to-wit, on the — day of ——, 188–, said John Graham, Jr., transferred his said option contract given him by the said John Jeffries and Elizabeth, his wife, on the coal and minerals in and on the said 340 and 440-acre tracts, to Joseph I. Doran; and on the — day of ——, 188–, the said John J. Jeffries and Elizabeth E. Jeffries,

his wife, and John Graham, Jr., sold to Joseph I. Doran all of the 340 and 440-acre tracts, in fee, at the price of $2 per acre.

Upon the inspection of the title to these lands, by William McGeorge, a countryman of Joseph I. Doran, and a faithful and painstaking conveyancer, whom Doran employed to examine the title to the said lands, it was found that John J. Jeffries had conveyed them to his children by the deed dated December 5th, 1865, and lodged in the clerk's office of McDowell county. McGeorge, acting for Joseph I. Doran, promptly refused to take the land; and Mrs. Elizabeth Jeffries was then first advised of the conveyance of the land by her husband to their said children, as aforesaid; and thereupon—viz., on the 29th day of March, 1882—she, the said Elizabeth E. Jeffries, suing by her next friend, William T. Moore (one of the most worthy and respected citizens of Tazewell county), instituted a chancery suit in the circuit court of Tazewell county, Virginia, against John J. Jeffries, Charles E. Jeffries, Albert Jeffries, Henry Saddler, and Sarah Ann Saddler, his wife, and others to set aside the conveyance aforesaid of John J. Jeffries to their said children, dated December 5th, 1865, and to perfect her title to the said 340 and 440-acre tracts which she had contracted to sell to Joseph I. Doran, as aforesaid. She alleged in her bill that the said 340 and 440-acre tracts of land were purchased by Israel Slade, a friend whom she selected for that purpose, from Jacob Francisco, with the proceeds of a land warrant issued by the United States government to an ancestor of hers, the said proceeds being her separate estate; and the said Slade being instructed by her to have the said land conveyed to her, which she supposed he had done, as he promised and undertook to do, until after she had sold the said lands to Joseph I. Doran, when, to her utter astonishment, she found that Jacob Francisco and Mary, his wife, had, on the 5th day of March, 1861, conveyed the said 340 and 440-acre tracts of land to her husband, John J. Jeffries. That the said conveyance

was a fraud upon her, and that in equity she is the owner of the said lands. Process issued in this suit on the 29th of March, 1882, and service thereof was accepted by Charles E. Jeffries and Henry Saddler and Sarah Ann, his wife, and John J. Jeffries. John J. Jeffries answered the bill, and admitted all the allegations therein to be true; and John W. Spotts was appointed guardian *ad litem* for the infant defendant, Albert Jeffries, and filed his answer as such at the May term, 1882, of the said court. At the May term, 1882, of the said court, a decree was entered in the said cause taking the bill for con- fessed as to Charles E. Jeffries, Henry Saddler, and Sarah Ann, his wife, and reciting that since the institution of the suit the said Charles E. Jeffries, Henry Saddler, and Sarah Ann, his wife, had, in compliance with the wishes of the plaintiff (their mother, the said Elizabeth E. Jeffries), conveyed to Joseph I. Doran all their right, title and interest in and to the land in the bill and proceedings mentioned, and that, as they had no fur- ther interest in the suit, abating the suit as to them. This decree was based upon an order of publication against Henry Saddler and Sarah Ann, his wife, they being non-residents of this state, and on acceptance of service of process by said Henry Saddler and wife, and Charles E. Jeffries.

During the progress of this suit a conveyance was made to Joseph I. Doran by Henry Saddler and wife and Charles E. Jeffries for their claim to one undivided half of the said 340 and 440 acres of land; and, under the proceedings in said cause a commissioner was appointed to convey, and who did convey, to said Doran the interest of Albert Jeffries, being his claim to one-fourth of the said lands, and in this conveyance John J. Jeffries and Elizabeth E. Jeffries, his wife, joined, which passed to Doran the remaining half of said land.

The complainant took the depositions of Thomas H. Frank- lin, who proved that the lands in the bill mentioned were of the value of $1.50 per acre, and of William T. Moore, who stated the value of the said land to be $2 per acre.

The complainant also took the depositions of LeRoy Emerson and Sally Emerson in the state of New York, who proved substantially her ownership of the land warrants as alleged in the bill. At the May term, 1883, of the said court, the court entered a decree annulling, setting aside and cancelling the conveyance of the said 340 and 440-acre tracts of land made by John J. Jeffries December 5th, 1861, to his said children, Charles E. Jeffries, Albert Jeffries, George S. Jeffries and Sarah Ann Jeffries, then Saddler; and reciting that the complainant had sold to Joseph I. Doran all of the said lands, and that she and her trustee, William T. Moore, had conveyed to said Doran all the land in the bill and proceedings mentioned, except one-fourth part of the two tracts of 340 and 440 acres purchased from Jacob Francisco and wife, and appointed James P. Kelly commissioner, to convey to Joseph I. Doran the remaining one-fourth interest in the said two tracts, said to contain 340 and 440 acres, in which said conveyance the said John J. Jeffries and Elizabeth E. Jeffries and the said William T. Moore, trustee, may join. But the said commissioner Kelly not to execute, acknowledge and deliver for recordation a deed for the said lands to said Doran till satisfactory evidence is adduced, showing the payment of the purchase-money to the said Elizabeth E. Jeffries. The conveyance of the claim asserted by Charles E. Jeffries and Henry Saddler and Sarah Ann Saddler, his wife, to Joseph I. Doran in and to the 340 and 440-acre tracts of land, and referred to in the decree in said cause, rendered at the May term, 1882, was made in consideration of $150.00, of which $75.00 was paid to Charles E. Jeffries, and $75.00 to Henry Saddler and wife; and the said deed duly executed and acknowledged is recorded in the clerk's office of the county court of Tazewell county. The deed· referred to in the said decree of May term, 1883, as made by Elizabeth E. Jeffries and her trustee, William T. Moore, to Joseph I. Doran, was, in fact, made also by John Graham, Jr., and was made for the consideration of $1,996.25,

paid to the said Elizabeth E. Jeffries, $1 to said Moore and $1 to said Graham. By the foregoing deed and proceedings, Joseph I. Doran became the holder of the legal title to all of the said 340 and 440-acre tracts of land for a valuable consideration; and the Southwest Virginia Improvement Company is an innocent purchaser, for valuable consideration without notice of any fraud by conveyance from the said Doran.

The decree of the circuit court of Tazewell county, rendered at its May term, 1883, in the case of Elizabeth E. Jeffries, by her next friend, William T. Moore, against John J. Jeffries, and upon the bill taken for confessed against the said Charles E. Jeffries and Henry Saddler and Sarah Ann Saddler, his wife, adjudicated the claim of the said parties in and to the 340 and 440-acre tracts of land. The allegations of the bill were not denied, but were by the said parties admitted to be true; and the court, in its decree, recites the conveyance made by them to Doran April 22d, 1882, which the court says, was made by them in compliance with the wish of the complainant in the suit; and that by reason of the said conveyance the said parties have no further interest in said suit, and, therefore, abated the suit as to them. This decree is clear and explicit in its terms, and it is an adjudication upon the matters alleged in the bill, and is binding and obligatory upon the said parties, who never appealed therefrom for error therein; and it must, for all time, be held conclusive upon the parties.

The allegations of the appellants are many and sweeping and oft-repeated of fraud, combinations and conspiracy against the appellees, the lawyers, and others of high standing, their own father and mother and their grandfather and grandmother. They charge, in their respective bills, that the decrees rendered by the circuit court of Tazewell county in the case of Elizabeth E. Jeffries, by her next friend, William T. Moore, against John J. Jeffries and others, defendants, were obtained by fraud and conspiracy; that their mother, Elizabeth E. Jeffries, their father, John J. Jeffries, the Southwest Virginia Improve-

ment Company, Joseph I. Doran, William McGeorge, James O'Keeffe, John Graham, Jr., Judge James P. Kelley, all conspired and combined to cheat, defraud and swindle them out of their land; and the bills enter into all the details of the alleged fraud, and call upon the defendants to answer the bills. The defendant Southwest Virginia Improvement Company answers both bills under its corporate seal; and Joseph I. Doran answers both bills under oath; and the answer of each defendant denies, in explicit and unqualified language, each and every allegation of fraud made in the bills against either of the defendants, or any agent of either. The issue thus made up between the complainants and the defendants is clear and well defined—fraud, charged by the complainants, and denied by the defendants.

Fraud is easily charged; but there must be complete and convincing proof to establish it. In *Hord* v. *Colbert*, 28 Gratt. 49, Staples, J., said: " Our inquiry is with the charge of fraud. Is it established by the testimony? And here it must be borne in mind that the law does not presume fraud. It is not to be assumed on doubtful evidence or circumstances of mere suspicion. The party alleging fraud must clearly and distinctly prove it. The *onus probandi* is upon him to prove his cause as charged in the bill."

The evidence in the cause is full and voluminous; and our conclusion, upon a careful and patient scrutiny of it all, upon both sides, is that it does not sustain or warrant the charge of fraud against the defendants, the Southwest Virginia Improvement Company and Joseph I. Doran, or the agent or agents of either; but that it constrains the belief that the only attempts at fraud lie at the door of the appellants, who have come into equity with most unclean hands and false clamor. The land in controversy is situated upon a poor, dividing ridge, with scraggy growth, and of very little value in 1861, when John J. Jeffries bought it for $100.00; and it so remained until it was negotiated for and purchased, in 1882, by some gentlemen, who

paid Elizabeth E. Jeffries, the adjudged lawful owner of it, the price of $1,996.25, and who likewise paid to her children, the appellants, Charles E. Jeffries, Henry Saddler and Sarah Ann Saddler, his wife, the agreed sum of $150.00, to extinguish their claim to an interest in the said land under and by virtue of a voluntary and sinister conveyance from John J. Jeffries in 1865, for the annulment and vacating of which a. suit of their mother was then pending in the circuit court of Taze-well county, which in a short time adjudged that they had no right, title or interest in the said land whatever.

The Southwest Virginia Improvement Company, a chartered corporation under the laws of Virginia, innocently acquired this land, along with other lands, and bravely encountered the jungles and the expense and risks of developing the minerals, expended vast sums in exploration, investigation and acquisition of title, built seventy miles of railroad, and have thereby developed and made valuable these lands. The company was a stranger to the soil and to the titles. . It was their right and duty to be on the alert in the expenditure of millions of money, to be sure that no bad title was imposed upon them; and, where there were various claimants to endeavor to acquire the titles of all. Naturally—alas! these munificent and enterprising *Pioneers* in the development of the hidden wealth and dormant energies of our state were set upon by some of the now discontented *vendors ;* their tracks scented over; hidden defects of title resurrected and disclosed; irregularities of conveyances sought after as badges of fraud; idle and irresponsible declarations called "*indicia*"; agents and lawyers denominated conspirators; and the character of reputable irreproachable citizens assailed upon the slightest pretext. The evidence of the appellants, Charles E. Jeffries, Sarah Ann Saddler and Albert Jeffries shows conclusively that they entered into a conspiracy and combination with their father, John J. Jeffries, to let Mrs. Elizabeth E. Jeffries sell the land to Joseph I. Doran, get the money for it and then leave the state; that, until all this

was accomplished, they, Charles E., Sarah Ann and Albert, were to keep quiet, make no protest or noise about the sale of the land until their father and mother got out of the state.

Sarah Ann Sadler, in her deposition, says : " When pap came over to our house, I told him I thought he had done mighty wrong to wrong the children out of their land, and I told him that he knowed very well that I heard him say to mother, a many a time, that she had nothing when they married but a set of dishes. Then he told me not to say nothing about it while they stayed in this country, but to wait till they got plumb gone—got out of the way. If the company found it out they might send them to the penitentiary." I asked him how we could do anything with the land when he was gone, and he said we could write and he would send his deposition. Charles E. Jeffries, in his deposition, says : " He (father) told me, after he had sold the land, to hold on and not to bring any suit for the land ; for me to let mother get all she could out of the land, that he knew that we were swindled out of our land, and for us not to bring any suit about the land until he could get away. That he never had been sworn in the case, but my mother had. Albert Jeffries, says in his deposition, that he went with his father to New York in September, 1884 or 1885, and under direction of his father returned with instructions to sue for this land. That he waited until the 7th day of March, 1887, and then sued one year, five months and twenty-nine days after he became twenty-one years of age. These appellants made their deed to Doran conveying their claim to an undivided one-half interest in the land, April 22d, 1882, and they instituted their suit March 7th, 1887—nearly five years. They were men and women of full age, *sui juris*, and in possession of all their faculties, their father had made the conveyance in 1865, but he held the possession, occupancy and ostensible ownership of the land from that time, seventeen years, until his wife sold it. They had never paid their father or their mother a dollar for the land, and there was no war-

ranty in the voluntary deed from their father of December 5th, 1865, which was lodged in McDowell county, West Virginia, and never in their possession, or in the state of Virginia. The records show and their own statements and evidence show, that they knew of their mother's suit claiming the land, that they knew its object and accepted service of the process in that suit against them. They had agreed to make the deed before they met McGeorge and O'Keeffe at Bailey's, and they knew and went to Bailey's house for the purpose of selling their claim, such as it was, to Doran; and the circuit court in its decree of May, 1882, approved their deed to Doran made 22d of April, 1882, and said, "It appearing to the court that Henry Sadler and Sarah Ann, his wife, and Charles E. Jeffries, have since the institution of this suit conveyed all their right, title and interest in and to the lands in the bill mentioned to Joseph I. Doran in the fulfillment of the wish of complainant," &c., their mother being the complainant. The court was a court of general jurisdiction and had jurisdiction of the parties and the subject-matter, all its proceedings were regular and the parties were duly served with process, and its decrees are binding upon them. (*Wilcher* v. *Robinson*, 78 Va., on pages 616, 617. *Tilson* v. *Davis*, 32 Gratt., on page 103). "The mere lapse of time during which a transaction has been allowed to stand may render it unimpeachable in equity. A man who seeks the aid of a court of equity must assert his claim with reasonable diligence." Kerr on Fraud and M. 303; and on page 306 of same: "The question as to delay may be much affected by reference to the nature of the property, or to the change of circumstances as to the character or value of the property in the intermediate period. A delay which might have been of no consequence in an ordinary case may be amply sufficient to bar the title to relief when the property is of a speculative character or is subject to contingencies or when the rights and liabilities of the others have been, in the meantime, varied. If the property is of a speculative or precarious

nature, it is the duty of a man complaining of fraud to put forward his complaint at the earliest possible time. He cannot be allowed to remain passive, prepared to affirm the transaction if the concern should prosper; or to repudiate it if that should prove to his advantage."

See *Barnett* v. *Barnett* 83 Va., p. 510; *Grimes* v. *Saunders,* 93 U. S.; *Terry* v. *Fontaine,* 83 Va. page 451; Pomeroy's Equity Jurisprudence, §§ 965, 917, 897, 817, 418 and 945. These appellants say that they received but little for their land. It was their mother's land; and she received value for it. What right had they to exact or to expect payment for her land? (As to Albert Jeffries, see *Zirkle* v. *McCue,* 26 Gratt. 517; Code 1873, chapter 174, § 10, p. 1125; Pomeroy's Equity, § 814.)

These appellants, with sublime filial devotion and duty to the wishes of their pious ancestor, " did hold on, and not bring any suit about the land until he could get away; and they did let mother get all she could out of the land; and they did say nothing about it while they (John J. and Elizabeth E. Jeffries) stayed in this country; and they did wait till they got plumb gone—got out of the way; and they did remain silent for nearly five years, so that the company never found it out; and they did so conduct themselves with regard to this great fraud as to save the gray hairs of their honored parents from the penitentiary." And now, after sleeping for this avowed sinister purpose upon their rights or wrongs, for nearly five years, when father and mother are plumb gone away into the state of New York, and after the Southwest Virginia Improvement Company have paid full value for and held the lands for nearly five years, and have spent hundreds of thousands of dollars in developing this and their other lands, without a hint of this dormant claim—they come with uplifted hands, crying fraud! fraud! and ask the aid of a court of conscience to consummate their villainy!

But the record discloses the fact that these appellants have no interest in this suit; that they have sold or assigned their suit to set aside the final and unappealed decrees of the circuit court of Tazewell county, to three speculative gentlemen, for fraud, in contravention of the principles of equity and the laws of public policy.  " While large classes of things in action are thus assignable, even at law, there are certain species belonging to a class otherwise assignable, the assignment of which, either at law or in equity, is prohibited from motives of public policy, for example, an assignment which violates the policy of the law against *champerty* and *maintenance*.  For this reason the assignment of a mere right of action to procure a transaction to be set aside, on the ground of *fraud*, is not permitted." · Pomeroy's Equity, Vol. III, § 1276.

The appellants come into equity with the voice of Jacob, but with the hands of Esau!  There is no error in the decrees appealed from, and our judgment is to affirm the same.

DECREE AFFIRMED.