# JOHNS *v.* HERBERT.

**EXECUTORS; TRUSTEES; TRUSTS; ASSIGNMENTS.**

1. While an executor cannot generally be sued outside of the jurisdiction in which the administration of the estate is depending, if he is also the trustee of a legacy for the life of the legatee, he is amenable to suit in any jurisdiction in which he may be found.
2. A trustee of a fund for management and investment must act in good faith and in the exercise of a sound discretion.
3. The fact that a trustee of a fund consisting of certain bonds fails to sell the same at the request of the husband of his *cestuis que trust*, although the bonds were paying no interest, is not sufficient to make the trustee liable for their depreciation in value.
4. While the conduct of a trustee in the management of his own funds, of a character similar to the trust funds, is not a test of his liability as trustee, it is a circumstance that may be looked to as evidence of his good or bad faith or negligence.
5. A trustee's conduct in the management of a fund is to be judged by the situation as it appeared at the time of the supposed negligence complained of.
6. The power of a trustee to sell stocks and securities is not to be implied, and if he sells them without competent authority and they afterwards rise in value he may be compelled to restore the investment at his own loss.
7. The fact that a trustee of a fund is not authorized by the instrument under which he acts, to change the investment at discretion, will not relieve him from liability if the fund is lost by his negligence. It is his duty to watch the investment with reasonable care and diligence, and to apply to the court promptly for leave to change it whenever his judgment as a prudent business man prompts him to do so.
8. Where a bill in equity against a trustee for an accounting showed that certain bonds when they came into the hands of the trustee were worth 117 cents on the dollar and no interest was ever paid on them and they continued to decrease in value until they fell to 26 cents, when the trustee sold bonds of the same sort belonging to himself at the last-named price, but held those of his *cestuis que trust* until they became valueless, it was *held*, on demurrer to the bill, that such facts made a *prima facie* case of actionable negligence which it was incumbent upon the trustee to explain.
9. The effect of an assignment by a life-annuitant of all her interest in bonds held in trust for her, to those entitled to such bonds after her death, is to extinguish the life interest and vest in the remaindermen an immediate right of action against the trustee for any loss that may have occurred to the body of the fund by his breach of trust, and such an assignment is not champertous.

No. 212. Submitted January 16, 1894.—Decided March 5, 1894.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia, holding an equity term, sustaining a demurrer to and dismissing a bill against an executor for an accounting. *Reversed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a decree sustaining a demurrer to appellant's bill. The complainants, John Johns, Jr., Arthur Johns and Maria M. Johns, are grandchildren and legatees of John Johns, deceased, and reside in the District of Columbia. Defendant, Arthur Herbert, is alleged to reside in Fairfax county, Virginia, and is sued in his own right as well as executor of the estate of John Johns, deceased. Mary M. Johns and John Johns, mother and father of appellants, were made parties defendant, but no relief was prayed as against them, and they have entered a disclaimer. The substance of the bill is thus set out in the record:

"3. That the late John Johns, of Fairfax county, Virginia, died on the 5th day of April, 1876, in said county, having prior thereto made and published his last will and testament, which was duly admitted to probate in the county court of Fairfax county, in the State of Virginia.

"4. That by the original will dated May 29, 1872, there was bequeathed to John Johns, a son of the testator, and the father of the complainants, six thousand dollars, in bonds of the Chesapeake and Ohio Canal Company, but by the codicil attached to said will this provision and bequest was revoked, and in lieu thereof the following provision is made: 'I hereby give and bequeath to my executors hereafter named, in trust for the sole and separate use of Mary, the wife of my son John, during her natural life, and after her death for the use of her children, to go to each in equal portions, the property of every description in my will given to him,' that is to say, to the said John Johns.

"5. That Arthur Herbert and Cassius F. Lee were appointed the executors of said will, and thereupon took upon themselves the burden of executing its provisions, and as-

sumed and undertook the administration and execution of all of the trusts therein imposed upon them, but as your orators are informed and believe and charge, the said Arthur Herbert was the active executor.

"6. That the bonds thus bequeathed in trust to Mary Johns, who is the mother of the complainants, were issued under the act of the General Assembly of Maryland, passed in 1844, to be seen in Chapter 281· of the acts of the General Assembly for that year, and reference thereto is hereby made, and they are numbered respectively 916, 917, 918, 919, 920, 923, 926, 928, 990, 992, 993 and 997, and bore interest at the rate of six per cent. per annum, payable semi-annually on the first days of January and July of each year.

"7. The said Cassius F. Lee, one of the executors named in said will, is dead, and the said Arthur Herbert, since, as well as prior to his death, took the active part in the management of said estate and the administration of the trusts created by said will.

"8. That it is plain and manifest from the terms of the will that the animating purpose of the testator was to create a fund which would provide an annuity for life to the said Mary M. Johns, his daughter-in-law, and at the same time preserve the bulk of the fund for his grandchildren at her death, all of whom were the natural objects of the testator's bounty, the annuitant being his daughter-in-law and the remaindermen being his grandchildren.

"9. That no interest upon said bonds, except possibly a portion of the interest due July 1, 1864, had been paid since the year 1864, and this partial payment was made about the year 1872, a short time prior to the date of the original will of the testator, and of this fact the said executors, particularly the said Arthur Herbert, were well aware.

"10. That at the time of the death of the testator the said bonds were worth upon the general monetary market one hundred and seventeen dollars on the hundred, their par value being one hundred dollars, and this in the face of the fact that no interest had been paid upon them, except as

aforesaid, since 1864, showing to any reasonable mind that the bonds were of a purely fictitious and speculative value.

" 11. That shortly after the death of John Johns, the testator, it is believed in the month of May, 1876, Mr. John Johns, the father of the complainants, and the husband of the annuitant, at the request of his wife, called on Arthur Herbert, at the banking house of Burke & Herbert, in Alexandria, Virginia, and requested and urged him to sell the said bonds, upon the ground and for the reason, that not only had no interest been paid upon them for twelve years, but that the canal company aforesaid was then being used as a political machine, and for the reason that the value of its bonds was purely speculative and fictitious, and in his judgment constituted a bad if not a worthless investment, certainly so far as an income-producing investment.

" 12. The complainants are informed and charge that the said John Johns was so persistent that he then and there offered to file a bill in the proper court, and at once, with the assent of the said executor, to bring the cause on to be heard by consent to obtain its sanction to the sale of these bonds and the reinvestment of the proceeds in other securities, and requested the said Arthur Herbert to consent thereto by putting in an immediate appearance and answer for said executor in the corporation court of the city of Alexandria, Virginia, which was then in session, but this offer the said Herbert declined upon the ground that he believed the bonds afforded a good investment, and that he himself held a large amount of them, and that he would do for the bonds held by him in trust as aforesaid what he would do for his own, but even this small promise, as will be seen hereafter, was made only to be broken.

" 13. That within a short time, perhaps three months, after the interview aforesaid, the said bonds, with the interest coupons on the same, which had been selling upon the market above par, depreciated so much in value that not more than fifty or sixty cents on the dollar could be realized for them by sale or otherwise, notwithstanding the fact that

they had attached to them coupons for twelve years, and up to the time said bonds fell due and matured.

" 14. That some few years ago, the exact year not being known to the complainant, and therefore not stated, the said Arthur Herbert, or the firm of Burke & Herbert (but it is believed after the death of Cassius F. Lee), of which the said Herbert is a member, sold the bonds, with their accrued and unpaid interest coupons, held by him or them, at twenty-six cents on the dollar or thereabouts, their market price, but he failed to sell and still retains the bonds left to him in trust as aforesaid, thus violating the promise that what he did with his own bonds he would do with those that were confided to him by the testator, John Johns, in trust for his daughter-in-law for her life, and remainder to her children, who are the complainants in this suit.

" 15. That although John Johns, the testator, has been dead over sixteen years, the said Mary Johns has never received one dollar of income from the bequest made to her by his will, and this notwithstanding the fact that the said Arthur Herbert was warned and admonished as far back as May, 1876, that the bonds were worthless, certainly as an income-producing investment, and notwithstanding the further fact that the said Herbert, by selling his own bonds, or those of the firm of which he was a member, has seen proper to save himself at the expense of the trust fund, and notwithstanding the further fact that by the will there was no sort of limitation placed upon his power of sale.

" 16. That the said Mary Johns, and her husband, the said John Johns, have transferred and assigned to the complainants all of their interest in and to the said Chesapeake & Ohio Canal bonds, and the overdue and unpaid interest coupons, left as aforesaid, by the will of John Johns, so that the complainants are now the absolute owners of the said bonds or the proceeds thereof, both interest and principal.

" 17. That in the spring of 1885, the said Mrs. Mary Johns, having removed to Washington, and needing money, requested the said Arthur Herbert to let her have the over-

due coupons on the said bonds, that she might pledge them as security for a loan, and in response to this request the said Herbert sent her, in coupons clipped from said bonds, seven thousand two hundred dollars, but although every effort was made to secure a loan upon them as collateral security, none could be effected, not even so small a sum as one hundred dollars.

" 18. Application was made to the said Herbert himself for a loan based upon them as security, and notwithstanding his previous confidence in them as an investment, he declined to make any advance whatsoever upon them. Complainants are now informed by the said Herbert that the clipping of said coupons destroyed their negotiability, a fact, which if true, must have been known to said Herbert at the time he clipped them and sent them to the said Mrs. Mary Johns, but which at the same time he failed to make known to her or to any one for her.

" 19. That said Herbert knew that the single and only purpose Mrs. Johns had when she requested him to let her have the overdue coupons was to pledge them for a loan, and if their detachment from the bonds to which they belonged in any way affected their negotiability, he should have so stated.

" 20. On the facts as herein stated, plaintiffs say and charge that the said Arthur Herbert has been guilty of a breach of duty in holding on to said bonds and failing to sell them, as he had the right and power to do under the will, at a time when something could have been realized for them, particularly when he was notified and warned in May, 1876, that their value was purely fictitious, and speculative, so that the manifest purposes of the testator could have been subserved, and the objects of his bounty protected; certainly it was his duty when losing confidence in them sufficiently to induce him to sell his own, he should at least at the same time have protected the trust fund by a sale of the bonds belonging to it; and the complainants submit that on the case as stated, they are entitled to a decree against him for

whatever loss, in the opinion of a court of equity, has resulted to the trust fund by reason of his breach of duty as aforesaid."

*Mr. Robert Christy* and *Mr. Marshall McCormick* for the appellants:

1. A decree can only be against the trustee personally, for the gravamen of the bill is that he has failed to exercise that diligence and care in the management of the trust property that the law required, and has permitted it to perish in his hands, when if he had observed the care imposed on him by law the estate would have been preserved and the manifest purpose of the testator, to provide an income for his daughter-in-law during her life, have been subserved. For this failure he is personally liable. The settler's intent must be carried out unless it contravenes some policy of the law. *Wright* v. *Miller*, 8 N. Y., p. 9.

2. The period in Virginia for the settlement of the estate by the executor is 12 months, and that having passed since Herbert's qualification, the presumption of law is that he has done what it required of him, and as executor has settled his testator's estate. The executor and trustee are distinct (7th Am. & Eng. Enc. Law, p. 179, n. 3), and the bill on its face states Herbert held those bonds as trustee. Its averment that Herbert turned over to Mrs. Johns $7,200 of coupons (for all debts must be paid before legacies) alleges such a possession by Herbert of the trust property as will raise the presumption on demurrer that he had taken possession as *trustee* and that he no longer held them as executor. *McClanahan* v. *Davis*, 8 Howard, 170; 1 Lewin on Trusts and cases cited, p. 205; *Ballard* v. *Marsden*, L. R. 14 Ch. Div., 374; *Dix* v. *Burford*, 19 Beavan, 409.

3. But even admitting that Herbert as executor, not being subject as such to this jurisdiction, is improperly named as a defendant, though no relief is asked against him, it will not affect the court's jurisdiction as to Herbert sued *personally*, who is before the court properly beyond question. *Vattier* v. *Hinde*, 7 Peters, 252. The bill in itself contains

sufficient matters of fact to maintain the case of the plaintiffs so that the same may be put in issue by the answer and be established by the proofs. *Harrison* v. *Nixon*, 9 Peters, 483. The plaintiffs' case the bill fairly states, and it is not necessary that it should point out in detail the means, which the statements, if proved, entitle plaintiff to adopt. *Walden* v. *Bodley*, 14 Peters, 156. Their case is fully stated and all the material facts alleged on which their claim rests. Certainly enough is alleged to indicate with distinctness the subject-matter in dispute, and equity will not imperatively require an amendment of the bill, but will simply dismiss it as to him, if he has in his capacity as executor been named improperly as a defendant.

4. The demurrer is to the *whole* bill. If *any part* of a bill entitles plaintiff to *relief* or *discovery*, a demurrer to the whole bill cannot be sustained. *Livingston* v. *Story*, 9 Peters, 632. Had the trustee Herbert sold these bonds and misappropriated the proceeds to his own use the *cestuis que trust* could have sued him wherever they could find him and would not have been obliged to go into the jurisdiction that appointed him executor and where he had proved the will. It cannot be contended that the *cestuis que trust* can only sue a trustee who under a will receives a legacy, and by his negligence and want of care wastes and loses it, only in the jurisdiction where the will was probated.

5. The trustee Herbert held the legal estate of Mrs. Johns' life-interest; on her death, it goes to her children. 1 Lewin on Trusts, p. 216. The children had a vested interest, though not an immediate right of enjoyment under the will. Such bonds as these are regarded as *personal* security. *King* v. *Talbott*, 50 Barbour, 453. There is nothing in the will to prohibit or preclude the trustee from disposing of this personal security and properly reinvesting the proceeds so as to carry out the testator's manifest intent, which he was bound to do.

6. If a trustee omits to sell property when it ought to be sold, and it is afterwards lost, although without any fault of

his, he is liable; because the loss, although not directly occasioned by his default, would never have happened had he not failed in performing what must have appeared a palpable, although perhaps not an urgent, duty. Story's Eq. Juris., Sec. 1269, n. 7; 2 Spence's Eq. Juris., p. 934; *Brice v. Stokes*, 2d Ldg. Cases in Eq., \*644, \*652. That under the facts admitted he was guilty of a negligence whereby the *cestuis que trust* have been greatly damaged, is plain.

7. Trustees should see that the intent and purpose of the trust are carried out. Here the intent of the testator was to give an income to his daughter-in-law for her life, to make a provision for her support. The amount of care expected and required of a trustee is that amount which his fiduciary position demands. If Herbert voluntarily undertook grave responsibilities he cannot complain if he is held bound to perform them. A trustee is bound to perform all acts necessary for the proper execution of his trust, *Taylor v. Benham*, 5 How., 233; *Gould v. Chappell*, 42 Md., 466, and must see that the property is converted from bad or indifferent security into good security. Lewin on Trusts, 7th ed., p. 265 *et seq*. Was it an exercise of a sound discretion to retain an investment made by a testator in a personal security on which no interest had been paid for thirteen years, and which was notoriously a speculative security, and on the interest coupons of which as security not a dollar could be borrowed? *King v. Talbott*, 50 Barb., 485. It must be at the risk of executors or trustees who leave the money of the *c. q. t.* in a state of insecurity, though they may have been induced to permit this without any personally corrupt motive. *Brice v. Stokes*, 11 Vesey, 319; *Ld. Shipbrook v. Ld. Hinchinbrook*, 16 Ves., 480; *Walker v. Symonds*, 3 Swanston, 42; *Maccubbin v. Cromwell*, 7 G. & J., 167; Willis on Trustees, 10 Law Lib., 81.

8. Mrs. Johns was told by the trustee he would do for her bonds as he would for his own. She was misled by that statement and did not take legal proceedings to enforce the trust and compel a sale of this bad and indifferent

security and the investment of the proceeds in a good interest-paying security. A *feme covert* will not be estopped on ground of *concurrence* when her judgment was misled. *Whistler* v. *Newman*, 4 Ves., 129; *Walker* v. *Shore*, 19 Ves., 393; *Hughes* v. *Wells*, 9 Hare, 773.

9. The plaintiffs sue as the assignees of her life interest in the trust property. The assignment was of an equitable interest—the transfer of her right of action in equity. In *McBurney* v. *Carson*, 9 Otto, 567, the sons of the testator transferred their entire interest, two-thirds, to their mother, who owned the other third under the will, and the mother sued in equity the executors and trustees and the purchasers from them for breach of trust, &c., and the court say the sons had a right *to transfer to the complainant their right of action.* See also *N. & W. R. R.* v. *Read*, 87 Va., from bottom of p. 189 to top of p. 190.

*Messrs. Gordon & Gordon,* and *Mr. R. Walton Moore* for the appellee:

1. No executor, holding commission by virtue óf a foreign appointment, can be sued for an accounting in this jurisdiction. The right to sue the appellee in his capacity as foreign executor, is not granted by the act of Congress of February 28, 1887, 24 Stat., 431. *Vaughn* v. *Northup*, 15 Pet., 1; *Wyman* v. *Halstead*, 109 U. S., 654.

2. The will gives no power to the trustee to change the investment. The bequest is of certain bonds, specifically named, owned by the testator years before his death, at the date of the will, and not producing revenue. That the trustee had no power to change this investment, without the intervention of some competent court, there can, in light of the authorities, be no question. Had he done so, and loss occurred, the trustee would have been held to the strictest accountability. The fact that the change was requested by the *cestuis que trust* would in no way have protected him. *Murray* v. *Feinour*, 2 Md. Ch., 419; 1 Perry on Trusts, Sec. 467; *Booker* v. *Pierce*, 130 Mass., 262.

All the cases and authorities cited for the appellants, on the question of liability, viz., *King* v. *Talbott*, 50 Barbour, 453; *Taylor* v. *Benham*, 5 Howard, 233; *Gould* v. *Chappell*, 42 Md., 466; Story and Spence, hold that where the terms of the trust impose the duty on the trustee to sell and re-invest (in 5 How. and 42 Md. the trustee was instructed to sell the land and reinvest the proceeds), or where the terms of the trust exclude the idea of the enjoyment of the property in specie by the beneficiaries, that then it is with the trustee to perform his plain duty at once in the one case, and in the other to exercise a reasonable discretion as to selling and reinvesting. But none of the cases cited present the question that arises when the terms of the trust indicate that the property is to be enjoyed in specie, and that the investment is to be preserved as made by the testator. Perry on Trusts, Sec. 460. See also *Hubbard* v. *Young*, 10 Beavan, 203.

The testator gave no direction or authority to the trustee to change the investment; no statute or rule of court empowered them to do so; the change could be effected only by decree of the court. The sole question now presented, therefore, is, whether the acting trustee is to be held liable for failing to obtain a decree of court when Mrs. Johns knew that the court was open to her for an application for a decree, and when she failed to ask for a decree directing a change, the court was equally open to the remaindermen.

3. The assignment, by Mrs. Johns and her husband to the children of "all of their interest in and to the said Chesapeake and Ohio Canal bonds and the overdue and unpaid coupons" is not an assignment of the right of action against the trustee for his default, but an assignment of the bonds and coupons. But the bill is drawn upon the assumption that the bonds and coupons are worthless. Besides this, the coupons, in the main, are held by Mrs. Johns, possession having been delivered to her by the trustee. The complainants must stand on their assignment, and they admit that the subject of the assignment is worthless, and was worthless at the date of the assignment. Is the

right to sue for a default, such as is alleged in the bill, assignable? The case of *McBurney* v. *Carson*, 99 U. S., 567, cited in brief of appellants, is not in point. In that case there was an assignment of an interest in a valuable trust fund, and the assignee filed the suit to have a release of a lien securing the fund set aside, and the property bound by the lien subjected to its payment. The Virginia case, also cited in the brief, *N. & W. R. R.* v. *Read*, 87 Va., 189, is not like this; but another Virginia case, *Jeffries* v. *S. W. V. Improvement Co.*, 88 Va., 862, is like it. In the latter case the court approved the rule stated by Pomeroy, and applied it: "The assignment of a mere right of action to procure a transaction to be set aside on the ground of fraud is not permitted." Pomeroy's Equity, Vol. III., Sec. 1276. See *Marshall* v. *Means* (Georgia), 56 Amer. Decisions—see note quoting *Hill* v. *Boyle*, L. R. 4 Eq., 260—"a right to sue trustees of a trust fund for interests and profits not assignable."

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The demurrer seems to have been sustained upon the ground that as the defendant Herbert is an executor appointed by the court of Fairfax county, Virginia, where the will was admitted to probate, he cannot be sued as such and brought to an accounting in this court, simply because he may be found in this jurisdiction. It is an established principle of law that an executor or administrator cannot be sued in another jurisdiction than that in which the administration of the estate is depending, for an accounting, or for acts involving the administration of the estate, or the assets thereof in his hands as such executor or administrator. *Vaughn* v. *Northup*, 15 Pet., 1; *Bateman* v. *Plumb, ante*, p. 156.

But this is not a suit for the settlement of the estate. There is no controversy as regards the executor's account. There does not appear to be any question of the right of any creditor. Some sixteen years had elapsed since the probate of the will. From the statement of the terms of the will contained in the bill, it would appear that defendant

Herbert stood in two relations to the testator: first as executor for all the purposes of administration, and second as trustee for the benefit of his legatees, after the estate should be closed, and until the death of Mary Johns. The lapse of time, the facts alleged in the bill, all go to show his assent to the trust created in him by the legacy. *Dix* v. *Burford*, 19 Beav., 409; 1 Lewin on Trusts, 205; *Wheatly* v. *Badger*, 7 Pa. St., 459. As a trustee of the legacy, then, and not as executor of the estate, he is amenable to suit in the courts of any jurisdiction within which he may be found.

2. The second objection to the bill here urged is that it does not show a cause of action against defendant as trustee. It is a settled rule that the trustee of a fund for management and investment must act in good faith and in the exercise of a sound discretion. *Harvard College* v. *Amory*, 9 Pick., 446; *Bowker* v. *Pierce*, 130 Mass., 262.

Two special grounds of culpable negligence are alleged in this bill against the trustee: (1) That immediately after the probate of the will he was called upon to sell the bonds, and warned that their value was then speculative and fictitious. (2) That he kept the bonds on hand until they became worthless, though in the meantime he sold bonds of his own, of the same kind, at twenty-six cents on the dollar of the principal.

In the absence of a specific charge of bad faith in the trustee's failure to sell the bonds upon the request urged in May, 1876, we do not think that the facts alleged in the bill on that ground are sufficient to make a case of actionable negligence. The mere fact that he was requested to sell by the life beneficiary, or that the bonds were paying no interest, is not sufficient to make him liable for their depreciation in value. It appears that the interest upon the bonds had been in default since 1864, with the exception of a small payment in 1872. The testator held on to them himself notwithstanding the failure to collect interest. His codicil, dated April 15, 1876, made a special bequest of them in trust for the use of his daughter-in-law for her life with remainder

to the appellants, and made no provision for, or even suggestion of, their sale or conversion into other securities. The trustee himself owned a large number of bonds of the same issue, and his judgment was against the sale at that time. It is true that the conduct of a trustee in the management of his own funds, of a similar character, is not the test of his liability. *King* v. *Talbott*, 50 Barb., 453. But at the same time it is a circumstance that may well be looked to as evidence of his good or bad faith or negligence. It can now be seen that an immediate sale of the bonds would have been best for all concerned; but the trustee's conduct is to be judged by the situation as it appeared at the time. *Bowker* v. *Pierce*, 130 Mass., 262.

Again, as we have above remarked, the testator had evinced his own confidence in these bonds, and it is evident he did not intend that the trustee should have the power to sell them at his discretion. The power of a trustee to sell stocks and securities is not to be implied. *Duncan* v. *Jaudon*, 15 Wall., 165 ; *Bayard* v. *F. & M. Bank*, 52 Pa. St., 232; see p. 237. Had he then sold them, and they had afterwards risen in value, he could have been compelled to restore the investment at his own loss. *Murray* v. *Feinour*, 2 Md. Ch., 419. In that case, the will bequeathed certain stocks in trust, the dividends of which were to be paid to certain parties for life, with remainder over. Respecting a change of the investment, the court said: " The will gives no power to the trustee to change the investment, and therefore it is supposed to be clear that if without an express authority from some competent tribunal he was to dispose of the stock and invest the money in other securities, he would upon a proper application be decreed to replace the stock; and if the stock be replaced at a less sum he would be compelled to invest the surplus in the same stock to the same uses."

It would seem, too, that Mr. Johns as the representative of his wife, was reassured by the statement of Mr. Herbert, as set out in the bill, with no impeachment of its good faith

at the time, and did not file a suit to compel the sale, as he might have done without the co-operation or consent of the executor. It is true that his conduct, either in acquiescing in the views of the trustee, or in failing to apply on his own account to the court for an order compelling the sale, may not bind his wife and certainly could not bind his children, who were minors at the time; but it may also be considered as a circumstance tending to support the good faith and discretion of the trustee in opposing the sale at that time.

3. The fact that the testator contemplated the continuance of the investment as he had made it originally, and that he did not vest the trustee with the power to change it at discretion, will not of itself, however, relieve him from liability if the fund were lost by his negligence. It was his duty to watch the investment with reasonable care and diligence, and to apply to the court promptly for leave to change it whenever his judgment, as a prudent business man, should have prompted thereto. 1 Perry on Trusts, Sec. 465.

Upon the second of the foregoing grounds, and upon others, it is not clear that the defendant is not liable. At the time the bonds came into his hands they were worth 117 cents upon the dollar of face value. No interest was ever paid on them, and they continued to go down, until a few years before the suit was filed, when they fell to 26 cents. The trustee sold his own bonds at this price, but held those of his *cestuis que trust* until they became valueless, making no effort to dispose of them. These facts are sufficient, in our opinion, to make a *prima facie* case of actionable negligence which it is incumbent upon the trustee to explain. *Brice* v. *Stokes*, 2 L. C. Eq., 1753, *note.*

If it be made to appear that after these bonds commenced to decline, the facts and circumstances concerning the want of safety in continuing to hold them, were such as to make it apparent that he should have applied to the court, giving the reasons and asking for authority to sell them and re-invest the money, then he ought to be held for the loss sustained by his failure to do so.

4. It remains now to consider the effect of the allegation of the bill, that "Mary Johns and the said John Johns have transferred and assigned to the complainants all of their interest in and to the said bonds and the overdue and unpaid interest coupons, so that the complainants are now the absolute owners of the said bonds, or the proceeds thereof, both interest and principal." There can be no objection to this transfer, so far as it extends. *McBurney* v. *Carson*, 99 U. S., 570.

The general effect of the assignment, as alleged, is to vest the complainants with the entire claim for both principal and interest against the maker of the bonds. Its special effect, so far as this action is concerned, is to extinguish the life interest of Mary Johns and thereby give the complainants, who are the remaindermen, an immediate right of action for any loss that may have occurred to the body of the fund. The assignment by Mary Johns of the unpaid coupons and her life interest in the principal of the bonds, as above alleged, does not by its terms vest complainants with her right of action for loss of the collection of these coupons or any of them. It is true that a mere right of action, as such, that is to say, the mere right to file a bill, has generally been held not assignable in equity, because in its nature champertous. 3 Pomeroy Eq., Sec. 1276; *Marshall* v. *Means*, 12 Ga., 61 ; *Jeffries* v. *S. W. V. Imp. Co.*, 88 Va., 862.

But if the life tenant had in fact assigned her right of action also for the loss or depreciation of the trust fund, we do not think that under the circumstances of the case it should be regarded as champertous, and therefore incapable of enforcement. It seems to come within the scope of the doctrine of *McBurney* v. *Carson, supra.*

Without intending to intimate an opinion upon the merits of the case as they may hereafter be disclosed, we think that the allegations of the bill are sufficient to put the defendant upon his answer.

For the error in sustaining the demurrer and dismissing the bill, *the decree must be reversed, with costs to the appellants, and the cause remanded for further proceedings. It is so ordered.*