**Larry Martin CORCORAN, Appellant,**

v.

**Theodore ROCKWELL, III, et al., Appellees.**

**No. 14194.**

District of Columbia Court of Appeals.

Argued June 21, 1979.

Decided Sept. 5, 1979.

---

Larry Martin Corcoran, Washington, D. C., pro se.

Joseph H. Sharlitt, Washington, D. C., for appellees.

Before KELLY, NEBEKER and HARRIS, Associate Judges.

KELLY, Associate Judge:

Appellant's cause of action against his former employers and their profit sharing retirement plan was determined by the trial court's ruling for summary judgment against him. He appeals that ruling, alleging the existence of factual disputes and, as a matter of law, appellees' violation of a fiduciary duty to him. We affirm.

From June 1968 until February 1972, appellant was an engineer in the employ of MPR Associates, Inc. As an employee, he was covered by MPR's profit sharing plan, a defined contribution[1] retirement plan into which a percentage, set annually, of MPR's profit was paid to the plan's funding trust and then allotted by formula to each qualified employee. Although the employee's right to his share of the fund vested at the time determined by formula, distribution of the funds did not occur until the employee retired. That procedure was subject to a single exception: if the employee terminated his employment with MPR before retirement and if that employee's vested account contained less than $1,000, the funds were distributed in cash to the employee. If more than $1,000 was in the account, the trustees were authorized to purchase an annuity, payable at age 65, for the employee. Plan § 3.2(c); see id. § 3.1(c)(3).

When appellant was terminated from MPR, other than by retirement, he had $1,026.21 in his profit sharing account. Therefore, MPR purchased an annuity in his name. The annuity guaranteed him a payment of at least $2,541.01 at age 65 and estimated a payment of $5,448.05.[2]

Appellant was not satisfied with this arrangement and brought suit asking the court to force MPR to place his allocation back into the trust which funds the plan, thereby allowing the same appreciation as enjoyed by active participants in the plan, or to pay him cash. He also sought exemplary damages. The legal basis for his claim was found in notions of fiduciary

1. See, e. g., Teamsters v. Daniel, 439 U.S. 551, 554 n. 3, 99 S.Ct. 790, 794 n. 3, 58 L.Ed.2d 808 (1979).

2. By appellant's calculation, the minimum payment represents a 2.1% per annum return. Appellees note that the current estimated earnings of the annuity are 6¾% per year.

duty; he argued that the plan's disparate treatment of former employees was arbitrary and that it violated the duties of loyalty, neutrality, effective management, and nondelegation. The trial court granted summary judgment for appellees.

Appellant makes, by our count, five arguments on appeal. He contends that the plan trustees breached their fiduciary duty by (1) arbitrarily treating terminated employees in a manner different from active employees; (2) maintaining a conflict of interest; (3) self-dealing; (4) failing to monitor investments; and (5) mismanaging the fund. We treat these arguments as involving only two issues: was the disparate treatment of terminated employees arbitrary and is the use of an annuity a violation of fiduciary duty.

■■■ Appellant's first argument is without substance in that it assumes that a court will interfere with the manner in which an employer and his employees contractually oblige themselves to administer and receive the benefits of a noncontributory [3] retirement plan. As long as there are no infirmities in the elemental aspects of the agreement itself, and none are alleged, we will not void a provision of the agreement. See *Gehrhardt v. General Motors*, 581 F.2d 7, 12 (2d Cir. 1978); *Agosti v. Huge*, 378 F.Supp. 1322, 1323–24 (D.D.C. 1974), aff'd, 172 U.S.App.D.C. 224, 521 F.2d 324 (1975), cert. denied, 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976); cf. *Neuffer v. Bakery & Confectionery Workers International Union*, 193 F.Supp. 699, 700 (D.D. C.1961), aff'd, 113 U.S.App.D.C. 334, 307 F.2d 671 (1962) (noncontributory plan does not give employee even contractual rights, applying Illinois law). "This is shown to be particularly true where as here the claimant did not enter the original employment under any expectation of pension benefits." *Id.* at 700.

When, in September 1968, MPR adopted its plan and appellant retained his position

with the company, appellant became a beneficiary of the plan. He could have sought other employment or successfully lobbied for a different plan. He did not, and now he must abide by the provisions of the plan, including that provision that allows the trustees to purchase annuities for only those individuals who are terminated from the plan.

The question of whether an annuity is a prudent investment presents a different inquiry, for that issue involves questions of the exercise of fiduciary responsibility. Appellant maintains that by purchasing an annuity for terminated employees, the trustees are dealing in their own interest, to the detriment of a class of beneficiaries, since the attendant reduction in plan administrative costs resulted in a diminished financial obligation on the part of the trustees (the corporation).[4] This is appellant's conflict of interest argument as well as his self-dealing argument. It is without merit, however, since the financial obligation of the corporation vis-à-vis the plan is tied only to the corporation's profits.

■ He argues second that by placing the investment in the form of an annuity contract in the hands of a bank, the trustees delegated their responsibility. The duty of trustees to monitor investments is time honored. See, e. g., *John v. Herbert*, 2 App.D.C. 485 (1894). And that duty should not be delegated to third parties. See 76 Am.Jur.2d Trusts § 313 (1975) (citing cases). However, "a delegation of powers may be made where authorized by the trust instrument." *Id.* It is clear that the trust instrument authorized the action in question here.

The claim of mismanagement, like the other claims of abuse of fiduciary duty, can be thoroughly addressed by answering one question: Is an annuity, and particularly this annuity, a prudent investment? See *Kosty v. Lewis*, 115 U.S.App.D.C. 343, 319 F.2d 744, cert. denied, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1963); D.C.Code 1978

---

3. A noncontributory plan is one in which the employer provides all of the funds for the plan. We make no statement as to contributory plans.

4. The trustees are all stockholders in the corporation and its officers.

Supp., § 47–253 (investments must be the fruits of the exercise of duty and reasonable care). The standard of care of a trustee is simple negligence. *Stern v. Lucy Webb Hayes National Training School*, 381 F.Supp. 1003, 1013 (D.D.C.1974).

The trial court held that the trustees breached no duty owed to appellant. We will reverse that decision only if we can find an issue of material fact which raises a question to be resolved by the jury. *Yasuna v. Miller*, D.C.App., 399 A.2d 69, 71 (1979).

■ In this record we find no such issue. We know that the particular annuity guarantees a very low rate of return, but we also know that the potential rate of return is greater than 6%.[5] The annuity provided a tax benefit to its recipient.[6] We recognize that there may be investments more profitable than annuities, especially in the short run, but given the security and long-term viability of the annuity,[7] we cannot call it a less than prudent investment.

Finding no error,[8] the judgment of the trial court is

*Affirmed.*

---

5. Plaintiff's exhibit showed that a local bank offered, at the time in question, a four-year certificate of deposit at 7¼% interest. At that time, the annuity was paying 6¾% per year.

6. *See* I.R.C. §§ 72(b), 403(a) (1979).

7. Appellant cannot receive payments from his annuity until he is 65 years of age or dies. At the time of his termination at MPR, he was 28.

8. The remainder of appellant's arguments are without merit or pose no issue requiring our consideration.

We note that appellees presented substantial argumentation that to the extent that the IRS approved the profit sharing plan, it must also

pass our scrutiny. Appellant cited Rev.Proc. 6, 1972–1 C.B. 710, for the proposition that such approvals do not insulate the plans from judicial review and disapproval. Appellant is correct. These approvals deal only with the federal income taxation aspects of the plan and indicate only that the Commissioner of Internal Revenue would *probably* take no action against the plan. They are of no precedential value. *See* Comment, *Tax Policies in Relation to Nonbusiness Legal Expenses and Prepaid Legal Services*, 26 Am.U.L.Rev. 451, 473 n. 126 (1977).