Kelly *v.* Loveland et al., Appellants.

456

Argued April 22, 1940.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*John H. Bigelow,* with him *Edwin B. Morgan,* for appellants.

*James M. Stack,* for appellee.

OPINION BY CUNNINGHAM, J., October 2, 1940:

The question involved upon this appeal is the amount of pay to which a retired employee of a city of the third class is entitled, under existing legislation, and the extent of his obligation to make monthly payments into the pension fund.

The action below was assumpsit. Following the filing of the statement of claim, the parties agreed upon the material facts and submitted them to the court below in the form of a case stated for its judgment as to the amount of retirement pay due plaintiff for the period from December 5, 1937, the date of his application for a pension, to August 7, 1939, the date of the case stated. From the net judgment for $2268.40 entered by the court below in favor of the plaintiff this appeal was taken by the defendants.

Frank P. Kelly, plaintiff below and appellee herein, entered the employ of the City of Wilkes-Barre as a clerk in the office of the city treasurer in April, 1899. Prior to January 1, 1928, he served in that employment a total period of twenty-six years and eight months. At the completion of his clerkship he was sixty-four years of age. His average annual salary for the last five years of that employment was $3,159.80.

In the latter part of 1927 he was elected city treasurer of Wilkes-Barre for the term of four years and took office on the first Monday of January, 1928. He was reelected in 1931 and served until the first Monday of January, 1936, when his second term expired. As city treasurer, he was charged with the duty of collecting taxes. By ordinance, his "salary" as city treasurer was fixed at the nominal sum of $120 per annum and in addition thereto he received specified commissions upon the taxes collected. It is agreed in the case stated that his nominal salary plus his net commissions upon

tax collections averaged $3,159.80 per annum, during the eight years of his incumbency.

By the Act of April 13, 1927, P. L. 196, (53 PS §§12198-4340 et seq.), the legislature authorized "Cities of the Third Class to establish a pension fund for employees of said cities who are not now protected by pension authorized by the laws of this state and in force at the time of the passage of this act." Pursuant to this authority, the city council of Wilkes-Barre, on July 19, 1927, passed an ordinance creating a pension fund for its employees not theretofore protected by existing pension funds. Four sections of the ordinance are pertinent to the present controversy.

Section 3 provides: "Every person now or hereafter employed by the City of Wilkes-Barre of the age of *sixty years* and upwards, who shall have been so employed for a period of *twenty years* or more shall upon application to the Pension Board herein created, be retired from service and shall during the remainder of his or her life receive the pension or compensation fixed by said Act of Assembly and this ordinance subject to such qualifications as are contained in this ordinance." (Italics supplied)

Section 4 provides in part: "During the lifetime of any person in the employment of the City of Wilkes-Barre, after said city shall have created such pension fund and the Pension Board as hereinbefore provided, he or she shall be entitled to receive as a pension annually, from the fund set aside for the purpose, *fifty per centum* of the amount which would constitute the *average annual salary or wages* which he or she received from the city *during the last five years* of his or her employment by the City of Wilkes-Barre, said pension to be paid in semi-monthly payments on the fifth and twentieth days of each month . . . . . ." (Italics supplied)

Section 5 provides in part: "The employees of the City of Wilkes-Barre shall, after the passage of this

ordinance, pay unto the Pension Board, in *monthly payments* an amount equal to *two per centum* of their *monthly salaries or wages* in no event however paying at a rate greater than *four dollars per month,* which shall be applied to the purpose of said Act of Assembly. Payment of the monthly amount or contribution herein mentioned *shall cease* and be discontinued at the time the *beneficiary receives the pension* as herein provided."

Section 13 provides: "The term 'employee' as used in this ordinance and the title thereto is meant to include *all persons* in the *service* of the City creating a pension fund and a Pension Board in accordance with the provisions thereof who are not now protected by pensions authorized by the laws of the State of Pennsylvania and in force at the time of the passage of the Act of Assembly of April 13, 1927." (Italics supplied)

As of the effective date of this ordinance, appellee was more than sixty years of age and had been employed by the city for more than twenty years. He was registered as a member of the Pension fund on August 1, 1927, and until the first Monday of January, 1928, when he became city treasurer, paid $4 each month into the fund. Commencing in January, 1928, he paid into the fund until January, 1936, the end of his second term, two per centum of his nominal salary as treasurer,—a total of $19.20, which was $364.80 less than he would have paid if he had continued to pay $4 per month during that period. On December 5, 1937, for the first time, appellee made formal application for retirement pay.

The following questions were raised in the court below: First, under Section 4, is the amount of appellee's retirement pay to be computed upon the basis of his salary as clerk or as city treasurer, and, if the latter, does his salary include the net commissions received by him for collecting taxes? Secondly, did appellee satisfy his obligation, under Section 5, by paying into the pen-

sion fund two per cent of his nominal salary as city treasurer, or should he have made payments on the basis of his nominal salary plus net commissions?

For the convenience of the court below, counsel suggested that appellee's right to retirement pay might be computed in any one of four ways, depending upon the interpretation placed upon the relevant provisions of the ordinance. The suggested methods were as follows:

(a) Upon the basis of his nominal salary as city treasurer, excluding net commissions and without any deduction. Under this interpretation, he would be entitled to retirement pay of $60 per annum, and the judgment for the period in question would be in the sum of $100.

(b) Upon the basis of appellee's *nominal salary* as city treasurer plus *net commissions,* with a lump deduction computed upon the theory that he was obligated to make payments into the fund upon the basis of his joint compensation, i. e., at the rate of $4 per month. Under this interpretation, he would be entitled to retirement pay of $1,579.90 per annum, with a net deduction of $364.80. Judgment for the period in question would be $2,268.40.

(c) Upon the basis of his salary as *clerk,* with a deduction similar to that mentioned in (b). Under this interpretation, he would be entitled to retirement pay of $1,579.90 per annum, with a lump deduction of $364.80. Judgment for the period in question would also be $2,268.40.

(d) Upon the basis of appellee's salary as clerk, without any deduction. Under this interpretation, he would be entitled to retirement pay of $1,579.90 per annum. Judgment for the period in question would be $2,633.20.

The court below adopted alternative (b), and, as above stated, entered judgment in favor of appellee in

the sum of $2,268.40. In reaching this conclusion, it held that appellee, both while serving as clerk and as city treasurer, was an "employee" within the meaning of Section 13, and that under Section 4 he is entitled to retirement pay based upon the average annual compensation received by him during the last five years he was city treasurer. It further construed Section 5 as obligating appellee to make payments into the fund on the basis of his nominal salary as treasurer plus the net commissions received by him.

Upon this appeal, appellants contend that appellee's retirement pay should be computed upon the basis of his nominal salary as treasurer, which, if correct, would mean that he is merely entitled to the sum of $60 annually. In other words, they urge the adoption of the first alternative.

From the foregoing statement of alternatives (c) and (d) it is apparent that the basic question here involved is whether the phrase "average annual salary or wages which he or she received from the city during the last five years of his or her employment," as used in Section 4, refers to the last five years prior to *eligibility* to retire, or to the five years immediately preceding *actual retirement* from the employ of the city.

Whether an employee's annual retirement pay is to be based upon his "average annual salary or wages" received during the "last five years" of employment preceding the date of his eligibility to retire or the last five years prior to his actual retirement may make a very material difference to some employees of third class cities.

This case should, therefore, be considered and decided upon legal principles, regardless of the fact that the parties have agreed that appellee's nominal salary as treasurer plus his commissions was exactly what he had received as a clerk in the office of which he later became the head—a remarkable coincidence, if true.

We agree with the conclusion of the court below that appellee, during his tenure of office as treasurer was an "employee" within the meaning of that term as used in the ordinance. Section 13 defines "employee" as including "all persons in the service of the city" not already protected by pension funds. Nowhere in the definition or in the other provisions of the ordinance is there anything indicating that its benefits are to be restricted to subordinate or appointive employees. No reason has been advanced warranting such a limitation upon the scope of its application, nor do we see any reason why its advantages should not extend to elective employees in the service of the city. The justification and need for the care of superannuated elective officers, who have devoted many years of service to a community, are just as compelling in the case of such officers as of appointed employees. The history of retirement funds created by state and municipal governments shows that in their origin they were limited to employees serving in non-elective positions, "later reaching out to include those elective officers who had continued in the service of the government for the same period of time as employees": *Retirement Board v. McGovern,* 316 Pa. 161, 164, 174 A. 400.

We are also convinced that, as the court below found, appellee's "salary" as treasurer, within the meaning of Sections 4 and 5 of the ordinance, is not restricted to the nominal sum of $120 per annum, but includes that amount, plus net commissions received by him for the performance of his duties as tax collector.

The connotation to be placed upon the term "salary" must depend upon the sense in which it is used and the purpose sought to be achieved. Here we are concerned with placing an interpretation upon it which "harmonizes with the spirit and purpose of the retirement acts": *Kane v. Policemen's Fund et al.,* 336 Pa. 540, 546, 9 A. 2d 739.

Basically, "salary" is compensation for services rendered. As to this, there is complete accord. The only difference of opinion arises as to whether it must be fixed and certain in amount by the terms of the contract of employment or may be variable in amount on a percentage basis. If we adopted appellants' contention, employees paid on a percentage basis would be deprived of the benefit of the ordinance in question. In the case at bar, appellee, though he rendered important services and received substantial compensation, would be entitled to only nominal retirement pay, a result incompatible with the spirit and purpose of the ordinance. The fair and reasonable intendment of the term "salary," as used therein, is that it embraces the entire compensation paid to the employee for the services rendered by him.

This ordinance, in spite of the use of the misleading term "pension" throughout its provisions, in legal contemplation creates what might more accurately be denominated a retirement fund. The "pension" payable to eligible employees is not a mere gratuity or bounty, but is earned compensation arising out of a contract right.

There are many differences between the retirement fund here involved and those created for the protection of state employees, school teachers, etc. For instance, the legislation relative to the retirement funds for state employees and for teachers expressly provides that the "final salary" therein referred to shall be the "average annual salary" for the specified number of years "immediately preceding retirement." What is here said must, therefore, be understood as applying only to the system provided for third class cities.

It is clear that appellee when he became a member of the fund and made his first monthly contribution had complied with all the conditions connected with this retirement system; he was at that time "of the age of

sixty years and upwards" and had been employed by the city "for a period of twenty years or more."

At the date of his election to the office of city treasurer he was fully eligible to retire from service. Under the decisions of our Supreme Court he had thereby acquired certain vested rights which could not be disturbed by any subsequent legislation or municipal action.

In *McBride v. Allegheny County Retirement Board et al.,* 330 Pa. 402, 405-6, 199 A. 130, it was said: "We endeavored to specifically hold in the McGovern case that eligibility for retirement pay is complete as soon as an employee or member of the retirement system has satisfied the conditions requisite for retirement, *whether the employee chooses to retire immediately or to continue in active service.* His rights to such pay are fixed as of the time he attained eligibility. Until retirement pay is earned as above described the right is inchoate. During this period retirement pay is being built up. The inchoate right becomes a *complete vested right* when the conditions connected with the particular retirement system are complied with. This right cannot be thereafter disturbed by legislation. We reiterated this thought in the Teachers' Tenure Act Cases, 329 Pa. 213." (Italics supplied)

The question before the Supreme Court in *Retirement Board v. McGovern et al.,* supra, was the constitutionality of a retirement act for employees of counties of the second class. In sustaining the act, it was said, inter alia: "An analysis of this and other retirement acts in this Commonwealth shows they are built on [the following] basis. The legislature, in effect, makes this offer to the employee: The state or municipality will contribute so much money to a fund and you will contribute to the same fund for a given time on the basis of service performed. Conditions or qualifications are added for the benefit of the fund and the employee ......
It is difficult to understand where this relation lacks

the elements of an executory contract if the employee and the state have directly or indirectly made any payments on account of it. See *Lynch v. U. S.,* supra., [292 U. S. 571]. The state and its agencies are as certainly bound by their contracts as are individuals." See also *Kane v. Policemen's Fund et al.,* supra.

If appellee had chosen to retire from the employ of the City of Wilkes-Barre at the conclusion of his term of service as a clerk in the treasurer's office, rather than to continue in its service in the office of treasurer, there could have been no question either as to his rights or obligations under Sections 4 and 5. Under Section 4 he would have been entitled, without any further contributions, to annual retirement pay during the remainder of his life in the amount of fifty per centum of his average salary as clerk during the last five years of his employment, or, in other words, during the last five years preceding his eligibility.

But appellee, instead of exercising his right to retire, chose to continue to serve the city in an elective office for an additional period of eight years. Two inquiries arise out of the situation thus created by him.

(a) Should he have continued to make payments into the fund upon the basis of his total compensation as city treasurer and not merely upon the amount of his nominal salary? (b) When he actually retired, was he entitled to have his retirement pay calculated upon his average salary during the last five years of his service as city treasurer, regardless of its relation to his former salary as a clerk, or upon his average salary as a clerk during the five years preceding his eligibility to retire?

Upon the first question the applicable provision of Section 5 reads: "Payment of the monthly amount or contribution herein mentioned shall cease and be discontinued at the time the beneficiary receives the pension as herein provided."

Under the provisions of the ordinance an employee can be retired and receive a pension only "upon application to the Pension Board." No application was made by appellee until after the expiration of his term as city treasurer. He was bound to make his monthly contribution to the fund as long as he was receiving a salary from the city; his obligation in this regard ceased only when he elected to become a "beneficiary" of the retirement system. For the reasons already stated, his contributions should have been at the rate of $4 per month and he owes the fund $364.80 for unpaid contributions.

With relation to the second proposition, a majority of the members of this court are of opinion that one of the rights vested in appellee, and all other employees of cities of the third class, as of the date each became eligible to retire was the right to receive annually after actual retirement, whenever the same might occur, the retirement pay prescribed in Section 4. In that section the amount a retired employee is entitled to receive is plainly described as "fifty per centum of the amount which would constitute the average annual salary or wages which he or she received from the city during the *last five years of his or her employment by the city.*" (Italics supplied)

As illustrated by the case at bar, eligibility and actual retirement are separate and distinct stages in the operation of this system and may occur years apart. Upon attaining eligibility the rights of each employee become fixed and permanent. Knowing that neither the percentage fixed in Section 4 (nor the period of five years therein specified) can be changed, but that the basis for its application will be the average of his salary or wages for the "last five years of his employment," by which we think the legislature meant the five years "immediately preceding his retirement," each employee can determine for himself whether it will be to his advantage to continue in the service of the city or retire.

When the conclusions we have reached are applied to the facts set forth in the case stated the mathematical result is that appellee is entitled to retirement pay at the rate of $1579.90, annually, from the date of his retirement, subject to a deduction for deficiencies in his contributions of a lump sum of $364.80. For the period in question the net amount due him is $2,268.40. As this is the amount for which judgment was entered by the court below in favor of appellee it will not be disturbed.

Judgment affirmed.