**TUTHILL v. WILSEY.**

No. 10098.

United States Court of Appeals, Seventh Circuit.

June 21, 1950.

L. B. Mann, Matthew E. Murray, Owen Fairweather, all of Chicago, Ill., Robert C. Brown, Jr., Chicago, Ill. (Seyfarth, Shaw & Fairweather, Chicago, Ill., of counsel), for appellants.

Charles B. Spangenberg, Chicago, Ill., Richard G. Finn, Chicago, Ill., for appellee.

Before KERNER, FINNEGAN, and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

This appeal is from an order sustaining a motion to dismiss and dismissing a complaint for a declaratory judgment on the ground that it presented no justiciable case or controversy under the patent laws. Plaintiffs in the action are the Tuthill Pump Company and the executor of James Tuthill, who died in September, 1944; defendant is the executrix of Irven H. Wilsey, who died in July, 1943.

The facts which make up the background out of which the present controversy arose are to be spelled out of the pleadings and exhibits attached thereto. Wilsey was an inventor; for two years prior to 1926 he and Tuthill had been associated in developing certain of his inventions. In December, 1926, they entered into a contract contemplating the manufacture by Tuthill of pumps and pumping machinery embodying Wilsey's inventions. The contract provided for the immediate delivery by Wilsey to Tuthill of duly executed assignments of his entire interest in all inventions theretofore made by him relating to pumps and pumping machinery, and the subsequent assignment of his interest in any inventions or improvements in such pumps or machinery thereafter made by him during the life of the contract. This obligation, however, was to continue "only so long as Tuthill or his assignee shall be engaged in the business of manufacturing or selling pumps or pumping machinery invented or designed by Wilsey, and only so long as Wilsey shall receive royalties therefor as provided in Paragraph 6 of this agreement; and said obligation shall cease and determine at the end of two years from the date of this agreement if Tuthill shall fail to begin and carry on in good faith the manufacture and sale of such Wilsey pumps within the said two years." Paragraph 6 of the agreement provided for the payment by Tuthill to Wilsey during the life of the agreement of a royalty of 5% "of the factory sales price on all pumps and pumping machinery, embodying present or future inventions made by Wilsey * *" but provided further that "no royalty whatever shall be paid upon said devices until the sales thereof have reached the amount of $250,000, whereupon royalties shall begin to accrue and be payable upon such devices thereafter made or sold." Paragraph 7 provided for a monthly written report by Tuthill to Wilsey showing items sold and monies received therefor. Paragraph 11 relating to the term of the agreement provided that it should extend "to the end of the term or terms of any patent or patents which shall be granted upon any inventions, present or future, relating to pumps or pumping machinery, made by Wilsey and to be assigned to Tuthill in accordance with the provisions hereof." The contract also provided for Wilsey's employment by Tuthill for one year while the business was being organized and developed, and Wilsey agreed to advise and assist Tuthill in getting started in the manufacture of pumps and in prosecuting applications for patents covered by the contract.

After the execution of the agreement the Tuthill Pump Company was incorporated; the contract was assigned to it; and it began the manufacture of the pumps and the machinery contemplated by the contract and was still engaged in such business in July, 1948.

In November, 1943, Mrs. Wilsey filed a complaint in a state court setting up the contract and asserting the breach thereof, and asking for an accounting and judgment for royalties thereunder. According to the second amended complaint therein, action on which was still pending when this case was heard, the term of the latest patent referred to in the agreement was to expire July 28, 1948, hence the agreement which became effective upon its execution was to remain effective until July, 1948. Plaintiff asserted that although the Company had since the execution of the agreement manufactured and sold large quantities of pumps and pumping machinery embodying inventions made by Wilsey, the "factory sales price" of which amounted to millions of dollars, neither Tuthill nor the Company

had ever paid any royalties or rendered any monthly reports as required by the contract. The complaint further alleged that all inventions made by Wilsey had either been formally assigned by him and formally accepted by Tuthill or the Company, or had become their property in fact and in law, and that they had built up a large and profitable business in pumps and machinery by their use.

Defendants filed successive answers, with affirmative defenses and counterclaim. They pleaded the statute of limitations; breach of the contract by Wilsey; relinquishment by him of all rights thereunder for a substantial consideration and termination of the contract by mutual consent; and failure of consideration. They also pleaded invalidity of the patents on which the royalties were claimed and non-infringement thereof. The record does not disclose the status of these various defenses—according to an affidavit filed by defendant here, dated February 10, 1949, relative to the history of the pleadings in the state court action, defendants there obtained leave to withdraw their counterclaim, and their third answer to the second amended complaint was stricken in January, 1949, with leave to file the fourth answer by February 15, 1949, which answer, if any, does not appear of record.

The complaint here involved, for a declaratory judgment, was filed November 24, 1948. In their complaint plaintiffs here, the defendants in the state court action on the contract, recited the fact of the execution of that contract, a copy of which was attached to the complaint, and asserted that Wilsey, in breach thereof, filed application for and obtained patent No. 1,732,871, issued October 22, 1929, on a certain improvement in packing for pumps in his own name and thereafter failed and refused to assign it to Tuthill, as required by the contract and demanded by plaintiffs; that the Company then developed a different method and type of packings which it used on pumps manufactured and sold by it; that in November, 1943, defendant filed suit in a state court alleging, among other things, that pumps theretofore made and sold by the Company embodied the alleged patented inventions covered by the Wilsey patent No. 1,732,871. The complaint here further alleged that the patent was invalid for various reasons. The prayer was for a judgment declaring the patent invalid and not infringed by an apparatus manufactured by them, and that the title to the patent had never been owned by them but had been owned from the date of issue by Wilsey or his estate.

Mrs. Wilsey responded by motion to dismiss, reciting the fact of the pending state court action for royalties under the contract and denying that there was any controversy under the patent laws, hence she asserted that there was no jurisdiction to grant the relief sought under the Declaratory Judgments Act, 28 U.S.C.A. §§ 2201, 2202. The court, upon an inspection of the pleadings and exhibits to which we have referred, including the entire record in the state court proceeding up to that point, found that there was no justiciable case or controversy under the patent laws and therefore dismissed the action.

■ To sustain their allegation that defendant had charged them with infringement of her patent rights, plaintiffs point to several allegations made by her during the prosecution of the state court action that pumps theretofore made and sold by plaintiffs embodied the inventions covered by patent No. 1,732,871. All of these allegations are to be found in her reply to the third affirmative defense and counterclaim. As we read the allegations relied upon by plaintiffs here they appear to be much more easily construed as an assertion of permissive use relied upon by defendant here to support her claim to the royalties provided for in the contract than as a charge of wrongful use or infringement. And of course, as the District Court pointed out, unless defendant here had charged plaintiffs with infringement of her patent rights, there could be no controversy under the patent laws and no right to relief under the Declaratory Judgments Act. See Borchard, Declaratory Judgments (2d Ed.) 806-7; III Walker on Patents (Deller's Ed.) § 413; Anno. 167 A.L.R. 1123, 1125. The case, Altvater v. Freeman, 319 U.S. 359, 63 S.Ct. 1115, 87

L.Ed. 1450, relied upon by plaintiffs to support their contention that there was a justiciable controversy between the parties under the patent laws does not sustain that contention.

Plaintiffs contend that the dismissal of their complaint is in conflict with the decision of this court in Chicago Metallic Mfg. Co. v. Edward Katzinger Co., 7 Cir., 123 F.2d 518. In that case we held that notwithstanding the pendency of an action on contract in a state court, the defendant therein was entitled to maintain its suit for declaratory judgment to have the patent under which it had formerly been manufacturing tinware under a license with a cancellation provision, duly exercised, declared invalid and not infringed by what it asserted was a different product manufactured by it after cancellation of the license agreement. We based that decision on the fact that the suit was on a controversy which arose under the patent laws rather than on contract since the contract under which the parties had formerly operated had been duly cancelled, and that the state court action could not, under the facts of that case, afford the same or as complete relief.

■■ The District Court was correct in stating that the facts of the Katzinger case were distinguishable. Here plaintiffs assert that, as in that case, the contract had terminated, but to substantiate that contention they allege only that Wilsey breached the contract by his refusal to assign patent No. 1,732,871, thereby rendering the contract null and void, and that he had treated it as repudiated. The court correctly pointed out that "forfeiture or repudiation of a contract does not follow from the single fact that covenants are broken unless the parties expressly agreed that such a forfeiture should follow. The decision of whether or not a termination of the contract occurred turns upon a determination of the parties rights under the contract between them. * * * The issue of termination and question of title in the present action are interwoven since the breach and nullification of the contract are alleged to have arisen from defendant's refusal to assign title to plaintiff and by

having the title issue in defendant's name. * * * In order to resolve the question of title the court will be required to construe the terms of the contract and that question is a primary fact to be settled before any question of infringement can be reached and resolved." [85 F.Supp. 586, 588]

Defendant suggests several other points which she says warrant an affirmance. However, since we have decided this appeal on the jurisdictional question, we do not deem it necessary to discuss these points.

The judgment of the District Court is affirmed.