Hamilton, Appellant *v.* **Wilson.**

Argued November 10, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and GUNTHER, JJ. (ARNOLD, J., absent).

*William C. Porter,* with him *A. L. Zeman,* for appellant.

*Alexander R. Curran,* for appellees.

OPINION BY RENO, J., January 20, 1953:

Appellant sued the members of The Officers and Employees Retirement Board of the City of Washington, a city of the third class, in assumpsit to recover $209.12 on account of retirement pay under an ordinance providing for such compensation after 20 years of service. The City filed preliminary objections in the nature of a demurrer; the facts were stipulated; and the court below sustained the demurrer and entered judgment for defendant.

The Ordinance was adopted on February 1, 1950, and was based upon the Act of May 23, 1945, P. L. 903, 53 P.S. §12198-4371, et seq., the pertinent section of

which is printed in the margin.[1] The ordinance followed the Act in most particulars, except that the provision in the Act requiring continued contributions only to the age of 55 was altered to require contributions to the age of 60. "Employe", was defined, both by the Act (§1, 53 P.S. §12198-4371) and the ordinance, as "a person in the service of the city, who is either, or who is not now adequately protected under all circumstances by pensions authorized by the laws of this Commonwealth and in force at the time of the passage of this act."

Appellant was an employe in the office of the city treasurer from March 21, 1928 to May 15, 1951, when he voluntarily retired, having previously paid several contributions required by the ordinance. He was then more than 55 years of age and less than 60. From 1928 until the first Monday of January, 1944[2] the city treasurer was the tax collector for the city and school district and was paid a nominal salary of $100 a year.

---

[1] Act, supra, §4, as amended, 53 P.S. §12198-4374: "(a) Every person now or hereafter elected or appointed to an office of, or employed by, any city [of the third class] which has created such retirement system and such board, as hereinafter provided, of the age of sixty (60) years and upwards who shall have so served as an officer or employe for a period of twenty (20) years, or more, shall, upon application to the board, be retired from service, and shall during the remainder of his life receive the compensation fixed by this act, subject to such qualifications as are hereinafter contained.

If any person shall have served twenty (20) years and voluntarily retires he shall, by continuing his contributions until the age of fifty-five (55), be entitled to the above compensation."

[2] This date is averred in the complaint, and the demurrer must be taken as an admission of its correctness. Appellee, however, argues that appellant did not become a City employe until January 1, 1951. See discussion, infra.

In addition he received a substantial commission on the taxes collected by him, out of which he maintained his office and paid all its expenses, including the salary or wages of appellant and his other employes. His employes were appointed by him, without action or confirmation by the city authorities, and were subject to the sole and exclusive control of the treasurer, who fixed their salaries, assigned their duties, and prescribed their hours of work. The relation of the treasurer to the City, his compensation, the appointment of his employes and their compensation were regulated by statutes in force during appellant's employment, a partial list of which are collected in a footnote.[3]

The date upon which the legal relations between the employes of the treasurer and the City were changed is left in some doubt. At one point in the opinion of the court below there is the statement: "This situation [referring to the relationship described above] continued up until the first Monday of January, 1944, at which time the City Treasurer was placed on a straight salary basis, and he and his clerks and deputies were thereafter paid out of City funds as other City employees were paid." At another place the learned judge, referring to an ordinance which provided salaries of $20 a month for the treasurer's deputy and clerk, stated: "There never was any Ordinance passed or in effect, authorizing the employment or payment of any clerks or deputies in the office of the City Treasurer, except the one herein referred to enacted on or about January 1, 1951." However, whether the correct date is 1944 or 1951 is not material to this decision, since in our view of the case, in either event

---

[3] Acts: June 20, 1901, P. L. 578, §5; May 4, 1927, P. L. 739, §1; June 23, 1931, P. L. 932, §§2556, 2559; June 21, 1935, P. L. 363, §§2, 4.

appellant had not completed 20 years of service as an employe *of the City* when he retired.

Clearly from 1928 to 1944, he was not an employe of the City. He was an employe of the treasurer, appointed by him, paid by him, controlled by him, and responsible solely to him. The City had not hired him and could not discharge him. During that period of his service the law regulating the affairs of cities of the third class provided: "Council shall have the power of appointment and dismissal of all employes and subordinate officers of the city . . .," and "shall prescribe, by ordinance, the number, duties, and compensation of the officers and employes of the city. No payment of such compensation shall be made from the city treasury, or be in any way authorized, to any person except an officer or employe elected or appointed in pursuance of law."[4] Therefore, unless the office or the employment is created or authorized by an ordinance it is without legal existence, and generally only an appointment *by the council* creates the status of an employe. *Steffy v. Reading,* 353 Pa. 539, 46 A. 2d 182.

Appellant argues that, even if he was not technically an employe, he is entitled to recover under the broad sweep of the definition of an employe as "a person in the service of the city." The purpose of the

[4] Acts: June 27, 1913, P. L. 568, Art. IV, §4, Art. VII, §8; June 23, 1931, P. L. 932, §§901, 902; June 28, 1951, P. L. 662, §9, 53 P.S. §§12198-901, 902.

The provisions referred to in the text were repealed pro tanto by the Act of May 23, 1945, P. L. 859, §1, which amended the Act of June 23, 1931, P. L. 932, by adding §1402.1 to Art. XIV thereof, as follows: "The city treasurer shall appoint all the assistants and employes of his office, whose number and compensation shall be fixed by council, and who, in all other respects, shall be considered as employes of the city." The section was re-enacted without change by the Act of June 28, 1951, P. L. 662, §1408, 53 P.S. §12198-1408. See also the Act of May 17, 1949, P. L. 1400, §1, 72 P.S. §5511.33.

definition was to extend retirement privileges to all employes who had not been previously covered, e.g., policemen and firemen. It was not designed as a method to provide retirement pay for persons who had served a city in some capacity but who were not officers or employes of it. The contractor who collects garbage is, in a very true sense, "a person in the service of the city", but no one would suppose that he could qualify for retirement compensation, however long or upon what terms he served the city. "In the service of the city" means service to the city in an office or in employment which has been created or authorized by an Act of the General Assembly or a duly adopted ordinance, and to which one has been legally appointed.

Appellant performed municipal functions; that is, he performed the duties which the law imposed upon the treasurer. His services were rendered to and commanded by the treasurer. He was "in the service of the" treasurer, not of the city. His position had not been created by an ordinance and he had not been appointed to it by the council. He came into "the service of the city" only after he was appointed to a position created by an ordinance which prescribed its duties and fixed its compensation.

When the nature and purposes of retirement legislation are examined, it becomes unequivocally clear that appellant does not come within its scope. In *Busser v. Snyder*, 282 Pa. 440, 454, 128 A. 80, the acts providing for retirement compensation were described: "[T]hey are founded on faithful, valuable services actually rendered to the Commonwealth over a long period of years, under a system of classification which the legislature has considered reasonable. These appropriations are for delayed compensation for these years of continued service actually given in the performance of public duties in their respective capacities, with the quality

of right and obligation in its concept. It is compensation for the hazard of long continued public employment." In *Retirement Board of Allegheny Co. v. McGovern*, 316 Pa. 161, 169, 174 A. 400, Mr. Justice KEPHART, later Chief Justice, defined retirement pay: "Retirement pay is defined as 'adjusted compensation' presently earned, which, with contributions from employees, is payable in the future. The compensation is earned in the present, payable in the future to an employee, provided he possesses the qualifications required by the act, and complies with the terms, conditions, and regulations imposed on the receipt of retirement pay." See also *McBride v. Allegheny Co. Retirement Board*, 330 Pa. 402, 199 A. 130; *Haldeman v. Hillegass*, 335 Pa. 375, 6 A. 2d 801; *Altieri v. Allentown Officers' and Employees' Retirement Board*, 368 Pa. 176, 81 A. 2d 884.

The basic theory which supports retirement statutes is that retirement pay is adjusted or delayed compensation for service rendered in the past. Adjusted compensation presupposes that compensation was paid in the past; delayed compensation is one earned in the past but not then paid. Adjusted or delayed compensation necessarily refers to compensation which a municipality has paid to an employe in the past or which an employe has earned in addition to the compensation he received from the municipality in the past. No adjusted or delayed compensation payable as retirement pay is due to a person who has not received and was not entitled to receive compensation from a municipality which ordains a retirement plan. The indispensable prerequisite for eligibility to retirement compensation is valid attachment to the public pay roll for the qualifying period. That status having been established, and the required tenure and age attained, retirement pay is collectible although, as may some-

times happen, the retiring officer or employe has made only a single contribution, as in *Haldeman v. Hillegass,* supra. A retirement plan, such as is here involved, imposes no obligation upon a municipality to pay retirement compensation to any one who has not received legally authorized compensation from it for the required period. Appellant was not on the City's pay roll for 20 years and is not entitled to retirement compensation.

*Kelly v. Loveland,* 141 Pa. Superior Ct. 455, 15 A. 2d 411, upon which appellant relies, involved the pension of a city treasurer, who of course was a person in the employ of the city. Part of his tenure was served as a clerk in the office of the city treasurer. Whether his salary as clerk was paid by the city or the treasurer does not clearly appear, although there are expressions in the opinion that seem to indicate that the city paid his salary. At all events, the question presented in this appeal was not there litigated, and the case throws no light upon this problem.

The court below properly entered judgment for defendants. This disposition of the appeal renders unnecessary discussion or decision of the question of the power of the City, by ordinance, to compel continued contributions to the fund until the employe becomes 60 years of age, contrary to the provision of the Act.

Judgment affirmed.