**Hugo NEUFFER, Appellant,**

v.

**BAKERY AND CONFECTIONERY WORKERS INTERNATIONAL UNION OF AMERICA, Appellee.**

**No. 16492.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 15, 1962.

Decided June 21, 1962.

Mr. Warren Woods, Washington, D. C., for appellant. Mr. David C. Venable,

Washington, D. C., also entered an appearance for appellant.

Mr. Herbert S. Thatcher, Washington, D. C., with whom Mr. James F. Carroll, Washington, D. C., was on the brief, for appellee.

Before BAZELON, WASHINGTON and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

Appellant, a former employee of the Bakery and Confectionery Workers International Union, brought suit in the District Court against the Union, seeking resumption of pension payments, together with back payments, claiming that he is entitled to them under the Employees' Pension Plan established by the Union. The District Court dismissed the complaint after trial, and this appeal followed.

Neuffer worked for appellee Union as an international representative until April 1952, at which time at the age of 55 he became eligible under the Employees' Pension Plan to retire and receive a pension. From August 1952 until July 16, 1958, Neuffer regularly received $108.71 monthly as a pension. On June 18, 1958, Neuffer was charged with having violated the Union constitution. In substance, the charge alleged that he had engaged in dual unionism by sponsoring the creation of American Bakery & Confectionery Workers International Union, a rival labor organization, and actively assisting in the enlistment of new members—many of whom were recruited from the ranks of appellee Union. The charge also alleged that the conduct of Neuffer was such as to bring him within the terms of a forfeiture clause in the Pension Plan, providing:

"(19) FORFEITURE OF RIGHTS. A participant shall forfeit all rights to any benefits hereunder if he be found guilty of an offense against the Union after proper trial in accordance with the Trials and Appeals procedure set forth in Article XXIII of the Constitution and laws of the Union and if, in consequence, the General Executive Board of the Union orders such forfeiture of benefits."

On July 10, 1958, appellant, after notice, was accorded a hearing upon the charges. He was found guilty by the Trial Board, and the General Executive Board of appellee subsequently ordered forfeiture of his pension benefits.

Appellant claims that he has a vested, legally enforceable right to continuation of pension payments, in spite of the provision for forfeiture. We think there is no doubt that any rights possessed by Neuffer under the Plan should be accorded judicial protection. But the crucial question is the extent of his rights. See Hurd v. Illinois Bell Telephone Co., 136 F.Supp. 125 (N.D.Ill. 1955), affirmed, 234 F.2d 942 (7th Cir. 1956), cert. denied sub nom. Seybold v. Western Electric Co., 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed.2d 124 (1956). Here, the Pension Plan voluntarily established by the appellee Union required no contribution from Neuffer or any other participant, and none was made. The Union could properly prescribe, as it did here, conditions on payment of pension benefits reasonably related to the Union's welfare. See Hughes v. Encyclopaedia Britannica, 199 F.2d 295 (7th Cir. 1952); Anno., 42 A.L.R.2d 462 (1955). The forfeiture clause was a part of the Plan from the beginning, and at all times after Neuffer's retirement. Appellant does not deny that he engaged in dual union activities contrary to the constitution of the Union. Nor does appellant here contend that the charges, hearing and trial by the Union Trial Board, as such, were in any way improper. He does say that he was not a "participant" in the Plan, but this is plainly untenable.[1]

---

1. The Plan appears not to contain an express definition of "participant." But Neuffer would seem to be more of a "participant" while he received a regular pension than he was before retirement, when he received, gave, and did nothing (other than being an employee) having anything to do with the Plan. In fact, the provision for forfeiture of benefits in event of an offense against the Union

■ What is important here is whether the forfeiture clause on its face, or in its application to Neuffer, is clearly unreasonable. We do not think that it is. Trivial offenses against the Union, to be sure, might not justify total forfeiture. But the offense of seeking to reduce or even cut off completely the Union's revenues by inducing its members to join another organization is certainly not a trivial one. Just as a corporation might properly enforce a contractual provision terminating a pension to one of its former executives if he competed with the company during his retirement,[2] so could this union enforce its reserved rights against a former employee who seeks to put an end to its very existence.

■ We think that Neuffer has by his own voluntary action squarely brought himself within the terms of an express forfeiture clause which the Union could validly write into the Plan. He argues that to enforce forfeiture would contravene public policy by discouraging activity by a former employee in behalf of a rival union. But appellant was perfectly free to exercise his every effort to have a rival union replace appellee Union. However, at least as a non-contributing beneficiary of the appellee Union's plan, he could not at the same time insist on obtaining pension benefits from the plan in the face of an express provision to the contrary. It appears, to be sure, that the Union was expelled from the AFL–CIO "on charges of corruption." But this would hardly justify the courts in holding that the Union was thereafter precluded from enforcing the provisions of its contracts.

■ Appellant seems to believe that the only consideration he owed for the pension was his work while actively employed, and that once those days were over he acquired a "vested right" to continuation of his pension regardless of the terms of his contract. But many "vested" interests are subject to divestiture upon failure to meet agreed-upon conditions. Put in another way, the consideration to be given on appellant's part consisted of both active employment and compliance with reasonable contractual conditions after retirement. Where the conditions are reasonable and not against public policy, and where there has been no fraud on the employer's part, we see nothing inherently illegal in such an agreement. Although the law abhors forfeiture, it nevertheless enforces reasonable contracts.

The action of the District Court in dismissing the complaint will accordingly be

Affirmed.

BURGER, Circuit Judge (dissenting).

The majority holds that a retirement pension which vested on appellant's retirement in 1952 is subject to cancellation unilaterally by the employer for which appellant had worked for nearly 20 years. To reach this result the majority opinion construes the contract most strictly against the employee when the law requires we construe it strictly against the

would seem to be primarily designed for use against those already retired, as the more usual sanction against an existing employee would be discharge from employment. It should be noted also that the Union's Pension Committee unanimously construed the forfeiture paragraph "as being applicable to any and all participants regardless of whether they have or have not reached or achieved a retirement or pension status * * *." Although this formal interpretation was made only after Neuffer was brought to trial, it was rendered as a general interpretation of the clause, and not as an explanation of the Plan as specifically applied to Neuffer.

2. 6 Corbin on Contracts § 1394 (1951); cf. Erikson v. Hawley, 56 App.D.C. 268, 12 F.2d 491 (1926); Masden v. Travelers' Ins. Co., 52 F.2d 75, 79 A.L.R. 469 (8th Cir. 1931) (insurance agent forfeits renewal commissions if employed by rival). See also the New York Life Insurance Company retirement plan described in Duran v. Commissioner, 123 F.2d 324 (10th Cir. 1941), which terminated payments to retired agents if they entered the service of another life insurance company.

employer who seeks to exact the forfeiture.

In 1952 in response to appellant's application for retirement the union president advised him 'you have reached the age that grants you *a vested interest* in the Employees' Pension Plan" under which he would thereafter receive for life a monthly pension of $103.71. The majority holding emphasizes the pension was a voluntary one requiring no contribution from Neuffer. The majority cites no authority to support making a distinction between contributory and non-contributory pension plans. Those courts which have had occasion to pass on the question recognize no distinction. We therefore break new ground and go outside the established rule to deprive appellant of the fruits of his long years of work.

A pension is simply a form of compensation deferred until retirement, Hamilton v. Wilson, 172 Pa.Super. 437, 443, 94 A.2d 116, 119 (1953), and is not merely an employer's gratuity unsupported by consideration, as it was once regarded. See Annot. 42 A.L.R.2d 461.

The majority holding does not challenge the proposition that the employer's plan was an offer to its employees of a unilateral contract which the employee could accept by fully and faithfully discharging his duties as an employee so long as that status existed.[1] As a form of deferred compensation, earned before but paid after retirement, the consideration of the employee becomes fully executed and of necessity must be fully executed by or at the time of retirement. When the employee tenders full performance by completing whatever years of service are required, the employee's part of the bargain is fully executed and his rights become absolute and vested.[2] At that point the employer has received all the consideration he asked for and all he is entitled to. It should take the clearest and most unequivocal expression of intent to support a conclusion divesting these vested rights.

"Performance constitutes acceptance of the offer, and after performance it cannot be revoked, so as to deprive a person who has acted on the faith thereof of compensation." Zwolanek v. Baker Mfg. Co., 150 Wis. 517, 137 N.W. 769, 772 (1912).

The consequence of the strict construction which the majority applies *against* appellant not only strains the language of the pension plan on which they rely but runs counter to the policy of the law in its historic aversion to forfeitures. The forfeiture clause here is construed by the majority to apply with the same force to a *former* employee who has been in retirement receiving a pension since 1952 as to an employee who has not yet qualified by performance.

While it is subsidiary to the main point on which I dissent, I suggest there is a very great difference in terms of the interests of the union between the "deviationism" or "dual unionism" of an employee *on the inside* of the staff, identified with the union organization, and the same activity on the part of a *former* employee after he has retired. Moreover the consequences of this harsh forfeiture are quite different on an employee who, presumably at least, can secure other employment and develop other pension benefits elsewhere. To apply it to a pensioner after he has retired and gone beyond his best earning years is quite another story. I can scarcely be-

1. See H. S. Kerbaugh, Inc. v. Gray, 212 F. 716 (2d Cir. 1914); Psutka v. Michigan Alkali Co., 274 Mich. 318, 264 N.W. 385 (1936); Wilson v. Rudolph Wurlitzer Co., 48 Ohio App. 450, 194 N.E. 441 (1934); Mabley & Carew Co. v. Borden, 129 Ohio St. 375, 195 N.E. 697 (1935); Schofield v. Zion's Co-op. Merc. Institution, 85 Utah 281, 39 P.2d 342, 96 A.L.R. 1083 (1934).

2. Cantor v. Berkshire Life Ins. Co., 171 Ohio St. 405, 171 N.E.2d 518 (1960); Scott v. J. F. Duthie & Co., 125 Wash. 470, 216 P. 853, 28 A.L.R. 328 (1923); Zwolanek v. Baker Mfg. Co., 150 Wis. 517, 137 N.W. 769, 44 L.R.A.,N.S., 1214 (1912).

lieve these factors are irrelevant when we deal with legal policy, for the law relating to forfeitures is essentially a policy matter in which equitable considerations have the dominant role.

As I read the forfeiture clause it sets forth a valid condition which Neuffer was required to meet *before* he would become entitled to pension benefits, i. e., completion of the required service period with no violation of Section 6. These forfeiture provisions related to conditions precedent to retirement eligibility; a violation would presumably lead to discharge and the union, understandably, ruled out any claim by a *discharged* employee for any part of the pension fund. Nothing in the plan suggests the contrary and to me it would require the most explicit terms to forfeit the valuable vested rights of a pensioner earned in a lifetime of work.

The employer here had the heavy burden of showing that the contract forfeiture clause explicitly and plainly applies to retired former employees. See, e. g., Philadelphia, Wilmington, and Baltimore R. R. v. Howard, 13 How. 331, 366, 54 U.S. 307, 331. Failing even to point to any language save the word "participant" the court rescues the employer by reversing the controlling standards of law and construing the contract strictly against the employee.

The majority labels as "plainly untenable" Neuffer's contention that the term "participant" in the forfeiture clause means employee—rather than former employees in a retired status. Neuffer was a "participant" when he was an employee and before his rights vested but after vesting he was primarily a beneficiary. Far from being an untenable contention it is a valid one which cannot be met by such a convenient "brush off" as the court gives it. The contract was the employer's instrument and must be construed most strictly against it. This should be added to the basic rule that forfeitures are to be avoided if there is a reasonable construction of the contract which can avoid it. See, e. g., Aetna Ins. Co. of Hartford,

Conn. v. Jeremiah, 187 F.2d 95 (10th Cir. 1951); Tuthill v. Wilsey, 182 F.2d 1006 (7th Cir. 1950); Galvin v. Southern Hotel Corp., 154 F.2d 970 (4th Cir. 1946); Meers v. Tommy's Men's Store, Inc., 230 Ark. 49, 320 S.W.2d 770 (1959). The reasonable—and indeed the correct—interpretation of this forfeiture clause is that "participants" are the employees to whom the pension plan is held out as an inducement for continued service and that the forfeiture clause does not apply to a former employee who has served his 20 years and accepted retirement or pension.

From the union point of view Neuffer has, of course, committed the highest crime in the catalog of offenses—that of aiding a rival union. The agreed statement of facts, which I assume indulges in no overstatement, recalls that the appellee union was expelled "from the AFL–CIO on charges of corruption." Neuffer's offense, for which forfeiture of his pension was exacted, was giving insignificant aid and sympathy to the AFL–CIO leadership who sought to rid the bakery workers of their corrupt leaders. All this occurred after his pension rights became vested and after he ceased to be an employee.

The majority relies on Hurd v. Illinois Bell Tel. Co., 234 F.2d 942 (7th Cir.), cert. denied, 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed.2d 124 (1956), but that case is not in point since it involved not a forfeiture but the construing of a contract formula for measuring the amount of pension. That pension plan, in "anticipation of public pensions * * * to aged persons," provided that the amount of the employer's sponsored pension would be reduced to the extent of one-half of any amount received by the pensioner under the Social Security Act.

The facts also distinguish the instant case from Hughes v. Encyclopedia Brittanica, where the employee's consideration was executory and no rights had vested as had Neuffer's. A reading of the two cases relied upon by the majority thus suggests that neither one is in point and neither supports the result reached.

Nor is Masden v. Travelers Ins. Co., 52 F.2d 75 (8th Cir. 1931) applicable. Renewal commissions on renewal premiums for insurance policies are based on continued performance of duties, i. e., "servicing" the policyholder. The right to renewal commissions was not a vested right for which all consideration had been fully performed.

The majority reaches its result by ignoring the controlling rules of law and equity relating to forfeitures and substituting a new standard of its own making, i. e., that of "reasonableness," as the criterion. Not a single case or other authority is cited to support "reasonableness" as the controlling factor. The law is simply that forfeiture clauses are always strictly and narrowly construed and forfeiture of a right is avoided whenever a court can discern a rational basis for that result. Here we strain to accomplish a result the law is said to "abhor." "Reasonableness" is not the issue. Neuffer is not concerned with whether the forfeiture clause is reasonable or unreasonable "on its face" but rather (1) whether it applies to him as a *pensioner*, and (2) whether it is a forfeiture of a kind the law will enforce absent clear and unambiguous language showing that the contract was plainly intended to control the conduct of *retired pensioners* as well as present employees.[3]

It seems to me extraordinary that this court should select such a case as this[4] to ignore the long standing equity rule that a forfeiture is to be construed most strictly against the party asserting it. The majority instead of "abhorring" this drastic forfeiture as repugnant has gone out of its way to embrace it.

I am unwilling to endorse the employer's brutal treatment of a pensioner who served it for most of his mature life. We open ourselves to the charge that judicial concern for individual rights in this jurisdiction is confined arbitrarily and capriciously to criminal cases.

3. This court, in another but related context, gave effect to the judicial abhorrence for forfeitures by refusing to sustain cancellation of a police official's pension after he qualified for retirement pension, where the cancellation was imposed because the officer refused to explain his private income sources to a Congressional Committee. This court carefully noted that the employed was seeking to penalize a "former member" of the police department for actions "after he elected to retire." Spencer v. Bullock, 94 U.S.App. D.C. 388, 389, 216 F.2d 54, 55 (1954).

4. The record discloses that two of the principal officers of the union who pressed charges against appellant leading to forfeiture of his pension were James G. Cross, President, and Peter H. Olson, International Secretary-Treasurer. These gentlemen are no strangers to our courts. Appellee's counsel informed us that Cross had been "retired" but could not recall the amount of the pension voted to Cross by the union. Peter H. Olson recently entered a plea of guilty to one count of a 23 count indictment, that count being for conspiracy to appropriate $35,000 of appellee union's funds. Whether he took from the pension fund from which he excluded appellant, or whether from the general treasury I am not aware. See Criminal No. 242–62, United States District Court for the District of Columbia. See also Olson v. Miller, 105 U.S.App. D.C. 54, 263 F.2d 738 (1959).