American Federation of State, County and Municipal Employees, District Council 88, AFL-CIO, Appellant *v.* City of Reading, Appellee.

Submitted on briefs, March 5, 1982, to Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

540

*Theodore H. Lieverman, Kirschner, Walters & Willig,* for appellant.

*David A. Binder,* Assistant City Solicitor, for appellee.

OPINION BY JUDGE ROGERS, May 21, 1982:

Local 2763 of the American Federation of State, County and Municipal Employees, District Council 88, AFL-CIO (Union) here appeals from an order of the Court of Common Pleas of Berks County affirming the award of an arbitrator in which the Union's grievance was denied. We affirm.

The Union is the exclusive representative for the purpose of collective bargaining of a unit of employees of the City of Reading including:

Unit I: all nonprofessional employees in the following departments: water, treasury, parks, sanitation, highway, public building, code services, maintenance services, engineering, library, duplication, revenue control, machine shop, accounts, earned income tax, and recreation; and excluding all supervisors, first-level supervisors, confidential employees and guards as defined in Act 195.

Unit II: all nonprofessional, first-level supervisory personnel in the same departments named above, and excluding all supervisors above the first level of supervision, confidential employees and guards as defined in Act 195.

The terms and conditions of the employment of members of the bargaining unit are controlled by a collective bargaining agreement executed by the Union and the city's mayor and effective by its terms during the period from January 1, 1977 to December 31, 1979. Article XIX, Section 7 of this collective bargaining agreement is, in pertinent part, as follows:

Job openings shall be filled from the most senior employee within the Bureau and who is qualified for the position. If the position is not filled from within the Bureau it shall be filled by the most senior employee within the Department and who is qualified for the position. If the position is not filled from within the Department then it shall be filled by the most senior employee within the City and who is qualified for the position. . . .

In April, 1978, Melvin Adams, the elected treasurer for the City of Reading, with approval of the City Council, appointed one Vernie Rismiller to a vacancy in the treasurer's office. It is conceded that the procedure contained in the collective bargaining agreement and set forth above for filling job vacancies was not followed in accomplishing this appointment.

Thereafter, the Union filed a grievance in which it asserted that the treasurer's action of appointment constituted a breach of Article XIX, Section 7 of the collective bargaining agreement. An arbitrator, duly selected, rejected the Union's position and, as we have indicated, this determination was affirmed by the court below.

Senior Judge HESS, writing for the Common Pleas Court, reasoned that the collective bargaining agreement provision governing the filling of job vacancies is in conflict with and therefore superseded by Sec-

tion 1408 of Article XIV of the Third Class City Code, Act of June 28, 1951, P.L. 662, 53 P.S. §36408 which provides:

Assistants and employes

The city treasurer shall appoint all the assistants and employes of his office, whose number and compensation shall be fixed by council, and who, in all other respects, shall be considered as employes of the city.

In this regard, the court relied on Section 703 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, No. 195, Article VII, *as amended*, 43 P.S. §1101.703 which prohibits parties to a collective bargaining agreement from effectuating any provision of the agreement "if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Pennsylvania. ..."

Our Supreme Court has clearly articulated the limited application of Section 703:

[I]tems bargainable under section 701 are only excluded under section 703 where other applicable statutory provisions explicitly and definitively prohibit the public employer from making an agreement as to that specific term or condition of employment.

*Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 510, 337 A.2d 262, 270 (1975). There is in Section 1408 of the Third Class City Code no legislative indication, much less an indication which is both explicit and definitive, that contrary provisions arrived at after collective bargaining are prohibited. We must, therefore disagree with the court below that PERA Section 703 alone prevents the effectuation of the collective bargaining agreement provision here at issue.

Notwithstanding our inability to agree with the court below on this point, in our view the arbitrator's decision here challenged does not primarily rest on PERA Section 703. Arbitrator Wayne Howard, after an extended discussion of the positions of the parties[1] and after noting that Section 1408 of the Third Class City Code apparently limits the purposes for which employes of the treasurer of cities of the third class are to be considered city employes,[2] dismissed the Union's grievance; concluding, as we understand the opinion, that the Union and the City never intended their collective bargaining agreement to constrain the city treasurer's statutory power of appointment with respect to employees in his office. Arbitrator Howard wrote:

> Contrary to the Union position, the arbitrator has not in any way found Article XIX of the agreement to be unenforceable or unlawful, a function reserved to a "court of competent jurisdiction." The arbitrator has merely found that appointees to the office of the City Treasurer do not fall within the ambit of the provision in question.

Our review of an arbitrator's interpretation of a collective bargaining agreement is severely restricted. The arbitrator's construction may not be disturbed if it can "in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention. . . ." *Commonity College of Beaver County v. Community College of Beaver County, Society of Faculty* (PSEA/

---

[1] The City has consistently pressed the argument accepted by the court of common pleas that PERA Section 703 prevents the effectuation of the job vacancy under these circumstances.

[2] *See Hamilton v. Wilson*, 172 Pa. Superior Ct. 437, 94 A.2d 116 (1953).

NEA), 473 Pa. 576, 594, 375 A.2d 1267, 1275 (1977) *quoting Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969). *See also Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981); *Port Authority of Allegheny County v. Division 85, Amalgamated Transit Union,* 492 Pa. 494, 424 A.2d 1299 (1981).

We cannot say that it was irrational for the arbitrator to interpret the collective bargaining agreement provision here at issue to exclude from. its "ambit" employees in the treasurer's office in the light of such indicia of the parties' intentions as the statutory power of appointment of the city treasurer, the circumstance of the treasurer's absence from the bargaining process culminating in the instant collective bargaining agreement, and the statutory language in the Third Class City Code excluding, for the purpose of hiring, employees in the treasurer's office from the class of "city employees" subject to the agreement.

Order affirmed.

ORDER

AND Now, this 21st day of May, 1982, the order of the Court of Common Pleas of Berks County in the above-captioned matter dismissing the Union's petition to vacate the arbitration award entered on October 30, 1979, in Case Number 14 30 1468 78 Q, is affirmed.

Judge MENCER did not participate in the decision in this case.

_____

DISSENTING OPINION BY JUDGE CRAIG:

The arbitrator's decision here was not rationally based upon the collective bargaining agreement because, in letting the city treasury job be filled from

outside without bidding from present employees as the agreement provides, the arbitrator flatly contradicted the agreement by pursuing his own interpretation of a statute, a factor quite distinct from the agreement.

The arbitrator's decision here did not draw its essence from the collective bargaining agreement; it drew its essence from a statute, the Third Class City Code.

The arbitrator made it clear that he was not interpreting the agreement at all when he said that Section 1408 of the Third Class City Code[1] "clearly *exempts* such employees from being considered as City employees for the purpose of exercising job rights under the Agreement. . . ." (emphasis in original.) He added:

> Moreover, the language of the Code to the effect that "the *city treasurer* shall appoint *all* the assistants and employees of his office" clearly and unambiguously removes these jobs from the category of job openings over which the City has appointive power.

He concluded:

> In short, since the City has no statutory power to make such appointments, it is obvious that it cannot bargain with the Union over the manner in which they shall be made.

Hence, he was clearly following his view of the statute, not interpreting the agreement.

Although the majority opinion certainly is correct in stating that an arbitrator's interpretation may not be disturbed if it can "in any rational way be derived from the agreement, viewed in the light of its

---

[1] Act of June 28, 1951, P.L. 662, §1408, *as amended*, 53 P.S. §36408.

language, its context and any other indicia of the parties' intention," the above quotes from the arbitrator's decision make clear that the arbitrator did not look at the statute as one of the "indicia of the parties' intention" but instead pursued it to reach a conclusion that the agreement is to be ignored because the statute is in conflict with it.

The majority of this court correctly rejects that legal conclusion. In holding that Section 1408 of the Third Class City Code contains "no legislative indication, much less an indication which is both explicit and definitive, that contrary provisions arrived at after collective bargaining are prohibited," the majority has here properly disagreed with the court below that effectuation of the collective bargaining agreement provision was prohibited by law.[2] Hence this court necessarily also disagrees with the legal conclusion of the arbitrator which was essentially the same as the erroneous legal conclusion of the common pleas court.

There is no disagreement as to the rule that "an arbitrator is confined to interpretation and application of the collective bargaining agreement. . . ." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596 (1960). Although the arbitrator may "look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *Id.*

Under this collective bargaining agreement, all nonprofessional employees and first level supervisors within the listed departments, specifically including the "treasury" department, are included within the bargaining units, and the agreement clearly requires

---

[2] That is, Section 703 of the Public Employee Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.703.

that job openings shall be filled from the most senior qualified person within the bargaining unit, looking first to the bureau, then to the department and then throughout the ranks of city government.

Because the majority holds that the Third Class City Code does *not* forbid bargaining as to how the power of appointment conferred by statute shall be applied, and because the agreement plainly and clearly covers the "treasury" department without exception or exclusion, we can see plainly that the arbitrator did not confine himself to interpreting and applying that collective bargaining agreement, but instead he rejected it for a legal reason which the majority rightly has ruled to be unsound as a matter of law.

Note that, as to other city employees, it is the council which "shall have the power of appointment" under Section 901 of the Third Class City Code, 53 P.S. §35901. Surely the existence of Section 901 does not mean that we should also regard it as another of the "indicia of the parties' intention" here, so that the agreement provision in this case, for filling jobs from within the city ranks if possible, is thus totally nullified because the council members also did not participate in the bargaining. The treasurer is not separate from the "City," any more than the council members are.[3]

---

[3] We do not know from the record how much the city treasurer was represented, or not represented, in the bargaining.

*Costigan v. Philadelphia Finance Department Employees Local 696*, 462 Pa. 425, 341 A.2d 456 (1975) is distinguishable because that case involved, as joint employers, the City of Philadelphia on the one hand and the Register of Wills, a row officer traditionally a county officer, on the other hand. Moreover, in that case, the city definitely was not involved in the bargaining process.

Here the treasurer, although elected, is simply one of the department heads of the city possessing a statutory power of appointment, which is not unusual, *e.g.*, the provisions of the Act of March

The decision should be reversed, so that the collective bargaining agreement is followed according to its clear and unambiguous terms.

7, 1901, P.L. 20, art. xii, §2, *as amended*, 53 P.S. §22510, conferring the employee appointment power upon department heads in cities of the second class A, etc.

There is only one governmental entity as an employer here, the municipal corporation which is the city, and it is up to the city and its department heads to see that all internal viewpoints are represented when bargaining is conducted.

Much difficulty could ensue if we treat the collective bargaining function, in our many third class cities, as being so fragmented that a union could not know when it has made an effective agreement. Note that the treasury department here was certified by the Pennsylvania labor relations board as part of the bargaining unit.