## O'Dea v. Public School Employes' Retirement Board

*Hugh J. McMenamin* and *Lewis F. Adler*, for plaintiff.

*Samuel M. Jackson*, Deputy Attorney General, and *Robert E. Woodside*, Attorney General, for defendants.

NEELY, J., January 18, 1954.—This is an action in mandamus brought against defendant board to compel the payment of certain additional moneys as retirement allowance to plaintiff, who is a member of the retirement system for public school employes established by the Act of July 18, 1917, P. L. 1043, 24 PS §2081, as amended. The complaint alleges that plaintiff, because of superannuation, retired at the age of 64 as an employe in the public schools of the City of Scranton. She became an entrant and contributor to the retirement system on July 1, 1919, the date the retirement system

was established, and was an employe as defined in the act from that date until her retirement on July 1, 1947. She was a school teacher and had been employed in the public schools of the Commonwealth since September 7, 1903.

It is averred that at the time plaintiff entered the retirement system a certain mortality table had been adopted by the retirement board, defendant herein; and that calculations made according to that table show that upon her retirement at age 64 she would be entitled to receive for life an employe's annuity of $1 for every $10.1011 then accumulated in the system from her contributions. It is averred, however, that when plaintiff retired, a different mortality table adopted September 17, 1934, was used by the board, which provided that a female contributor retiring at age 64 may purchase an employe's annuity of $1 for every $10.734 then accumulated from the contributions of the employe. Because of the use of this latter table by the board in calculating plaintiff's employe annuity, more money was required from the accumulations of plaintiff's contributions to purchase the employe annuity, the necessary result being to reduce the amount of the employe's annuity that could be purchased by plaintiff from her total accumulations.

It is averred that defendant board determined that plaintiff was entitled to an annual retirement allowance of $1,506.38, composed of her employe's annuity of $426.38, a State annuity of $792, and a further State annuity for prior services of $288, making a total retirement allowance of $1,506.38. It is alleged, however, that the employe's annuity should have been calculated at $453.11, by using the tables in effect at the time plaintiff entered the retirement system, and that the yearly retirement allowance, therefore, should have been calculated at $1,533.11. No question is raised here concerning the correct computations as to the

State annuity, there being involved only what the plaintiff claims is the miscalculation of her employe's annuity.

Plaintiff avers that she accepted the employe's annuity as calculated by the board in the amount of $426.38 under protest and without waiving her rights to claim the additional sum in accordance with the relief herein requested. Plaintiff asks that we direct defendant board to pay her the retirement allowance of $1,533.11, based upon the increased employe's annuity, and prays for judgment against defendant in the amount of $98.01, representing loss to plaintiff by reason of defendant's failure to pay plaintiff the amount to which she claims she was entitled since July 1, 1947, the date of her retirement.

By its answer, defendant avers that the computation as made by defendant of plaintiff's retirement allowance was correct. Defendant sets up as an additional defense the statute of limitations and laches.

This case was tried by the court without a jury under the Act of April 22, 1874, P. L. 109, 12 PS §688, pursuant to a stipulation filed. Testimony was taken from which we find the following

## Facts

1. Plaintiff resides in the City of Scranton, Lackawanna County, Pa.

2. Defendant is an administrative board created under the Act of July 18, 1917, P. L. 1043, which act established a retirement system for public school teachers of the Commonwealth of Pennsylvania.

3. Defendant is charged with the administration of the retirement system.

4. Plaintiff is a member of the retirement system and as such is entitled to superannuation retirement allowances as provided in the act.

5. Plaintiff was a school teacher and had been an employe of the public schools of this Commonwealth

from September 7, 1903, until the date of her retirement on June 30, 1947.

6. On June 30, 1947, plaintiff terminated her services as an employe in the public schools of the City of Scranton, whereupon she filed with the Public School Employes' Retirement Board, defendant herein, an application to retire as an employe on July 1, 1947, at age 64.

7. On plaintiff's application for retirement she elected to receive the maximum retirement allowance for superannuation allowed by the Act of July 18, 1917, P. L. 1043, as amended, namely, an annuity for life from the time of her retirement.

8. In computing plaintiff's allowance for superannuation retirement, defendant board determined that she was entitled to an annual retirement allowance of $1,506.38, comprised of (a) an employe's annuity of $426.38; (b) a State annuity of $792.00, and (c) a further State annuity as a "present employe", i.e., an employe prior to the establishment of the retirement system, amounting to $288.

9. Upon the board's determination of plaintiff's retirement allowance, payments were made to her at the rate of $125.53 per month which were received by her under protest and without waiver of rights.

10. Plaintiff demanded from defendant an annual retirement allowance of $1,533.11, made up of an employe's annuity of $453.11, plus the two items of State annuity, to wit, $792, and the additional $288 for services prior to the establishment of the system.

11. At the time plaintiff became a contributor to the retirement system on July 1, 1919, when the system was established, the board had adopted a certain mortality table which provided that contributions of $10.1011 would be required to purchase an employe's annuity of $1 for a female contributor retiring at age 64.

12. The board determined in 1934, as revealed in its annual report published on June 30th of that year, that there was an unfavorable element in the financial condition of the retirement system due to "the trend towards a lower mortality rate among teachers retiring on account of superannuation."

13. The actuaries of the board had then made an actuarial investigation into the longevity of school teachers and this investigation showed that the mortality rate of retired members of the retirement system showed a longer life expectancy than that set forth in the mortality tables which had been adopted when the system was established on July 1, 1919, and when plaintiff had entered the system.

14. On September 17, 1934, the board adopted new tables recommended by their actuaries, giving effect to their experience as to the increased longevity of school teachers, and providing that all allowances dating from October 1, 1934, were to be paid by using the new tables, which new tables applied to employes who had entered the retirement system on July 1, 1919, and thereafter.

15. The new tables adopted by the board on September 17, 1934, provided that $10.734 would be required to purchase an employe's annuity of $1 for a female contributor retiring at age 64.

16. The employe's annuity under the act is computed by the board from his or her total contributions, i.e., the employe's accumulated salary deductions; and since the mortality tables adopted on September 17, 1934, provided for an increased life expectancy, the result, in order to give effect to the increased expectancy, was to reduce the amount that could be paid each year on the employe's annuity according to the computation used by the board after the adoption of the new tables.

17. On the basis of calculations made by the use of the new mortality tables adopted September 17, 1934, the board computed plaintiff's employe's annuity in the amount of $426.38 giving effect to her increased life expectancy at age 64.

18. The mortality tables which had been adopted by the board on July 1, 1919, when plaintiff entered the retirement system, provided for an employe's annuity to plaintiff of $453.11 based upon her retirement at age 64, which mortality tables, however, were not in effect at the time of plaintiff's retirement.

### Discussion

The Act of July 18, 1917, P. L. 1043, as amended, supra, makes provision for the establishment of a public school employes' retirement system. The administration of the provisions of the act is vested in a retirement board, now consisting of eight members, defendant herein. The act confers upon the board the power and privileges of a corporation, and provides that the members of the board shall be trustees of the fund created by the act. It is provided also that the board shall have power to make rules and regulations for the administration of the fund and the transaction of its business.

The statute, as amended, creates the School Employes' Retirement Fund and certain accounts therein, 24 PS §2114, and designates the Treasurer of the Commonwealth as custodian of the fund created: 24 PS §2103. It provides, inter alia, for an employes' annuity savings account, 24 PS §2119, consisting of the accumulated deductions from the salaries of contributors who are employes. Upon retirement of a contributor, his or her accumulated deductions under the act are transferred from the employes' annuity savings account to the credit of a ledger account to be known as the employes' annuity reserve account: 24 PS §2120. From the accumulations in this reserve account, upon

employe's retirement his or her employe's annuity is calculated.

There is also created in the act a certain account known as the contingent reserve account (24 PS §2116), to which the Commonwealth makes contributions: 24 PS §2116.1. Upon the retirement of a new entrant, the act provides that an amount sufficient to pay an employe's State annuity reserve shall be transferred from the contingent reserve account to the credit of a ledger account to be known as the State annuity reserve account, 24 PS §2117, from which reserve account the employe's State annuity is to be paid. There is also created an additional State annuity reserve account no. 2 (24 PS §2118), into which account the Commonwealth makes payments based upon a certain ratio to the employe's earnings, and as to a "present employe" his or her State annuity is to be paid from the State annuity reserve account no. 2. In the act, the term "present employe" refers to one presently employed when the Retirement Act was adopted, and "new entrant" means one who has entered the system thereafter.

There is involved here no question concerning plaintiff's rights in the State annuity, our only problem being whether the employe's annuity based upon her accumulated deductions transferred to the employes' annuity reserve fund is payable at the rate of $453.11, as she claims, or at the rate of $426.38, as determined by the board. The reason for the determination by the board that the lower rate is payable is apparent from this record. It springs from the increase in plaintiff's life expectancy. In the experience of the retirement board's actuaries, female teachers were enjoying longevity beyond their life expectancy as set forth in the mortality tables adopted at the time of plaintiff's entrance into the system. To give effect to this lower death rate, the new mortality tables were adopted on September 17, 1934.

Plaintiff claims that when she entered the retirement system she thereby entered into an executory contract by which the board agreed to pay her retirement benefits according to the mortality tables in use at the time of her entrance. As distinguished from a pension, which is a mere gratuity, an employe's benefits under a retirement plan, such as that involved under the public school employes' retirement system, is considered as being based on the employe's contract. These benefits are in the nature of delayed compensation for past services. When the employe enters the retirement system, the rights which he or she thereby acquires are inchoate, i.e., the right to benefits according to the provisions of the retirement plan when the retirement conditions are fulfilled.

In Retirement Board of Allegheny County v. McGovern et al., 316 Pa. 161, 169 (1934), the Supreme Court said:

". . . A pension is a bounty or a gratuity given for services that were rendered in the past. This act provides for retirement pay. Retirement pay is defined as 'adjusted compensation' presently earned, which, with contributions from employees, is payable in the future. The compensation is earned in the present, payable in the future to an employee, provided he possesses the qualifications required by the act, and complies with the terms, conditions, and regulations imposed on the receipt of retirement pay. Until an employee has earned his retirement pay, or until the time arrives when he may retire, his retirement pay is but an inchoate right; but when the conditions are satisfied, at that time retirement pay becomes a vested right of which the person entitled thereto cannot be deprived: it has ripened into a full contractual obligation."

And at page 177, in analyzing retirement acts in this Commonwealth, the court continued:

". . . The legislature, in effect, makes this offer to the employee: The state or municipality will contribute so much money to a fund and you will contribute to the same fund for a given time on the basis of service performed. *Conditions or qualifications are added for the benefit of the fund and the employee.* * * * It is difficult to understand where this relation lacks the elements of an executory contract if the employee and the state have directly or indirectly made any payments on account of it." (Italics supplied.)

In McBride v. Allegheny County Retirement Board et al., 330 Pa. 402, 405-06 (1938), the Supreme Court said:

". . . We endeavored to specifically hold in the Mc-Govern case that eligibility for retirement pay is complete as soon as an employee or member of the retirement system *has satisfied the conditions requisite for retirement, whether the employee chooses to retire immediately or to continue in active service. His rights to such pay are fixed as of the time he attained eligibility.*" (Italics supplied.)

And continuing at pages 407-08, the Supreme Court said:

". . . As we pointed out in the McGovern case: 'The legislature may from time to time, within the confines of that established relation, alter, change, amend, and render intact the actuarial soundness of the system so as to strengthen its fibers in any way it sees fit. Changes in details, such as length of service required, contributions needed, and age requirements, to keep the fund on sound actuarial practices, are essential. Flexibility in component parts is a paramount necessity to guard against changed conditions and to permit keeping abreast with actuarial science. The basis is contribution from the county or state and from employee members'."

See also Bausewine v. Philadelphia Police Pension Fund Association, 337 Pa. 267, 270 (1939) ; Kreinbihl v. City of Philadelphia Police Pension Fund Association, 340 Pa. 347 (1941) ; Firemen's Pension Fund v. Minnaugh et al., 80 D. & C. 297 (1951).

The decisions indicate that the public school employes' retirement system, established by legislation, created a contract between the Commonwealth and the employe who had entered that system to pay by way of retirement allowance additional compensation for services rendered in the past, including in that allowance the employe's annuity based upon his or her own contributions. Cf. Dom v. State Employes' Retirement Board, 345 Pa. 489, 493 (1942) ; State Employes' Retirement System v. Dauphin County et al., 335 Pa. 177, 183-185 (1939) ; Kelly v. Loveland et al., 141 Pa. Superior Ct. 455, 463 (1940) ; Hargest v. State Employes' Retirement Board, 79 D. & C. 549.

When this plaintiff became an entrant into the public school employes' retirement system, her rights were then inchoate, and it was not until her retirement for superannuation that her benefits in the retirement plan could be determined. We must examine her contention as to the terms of the alleged executory contract at the time she entered the system in the light of these principles.

Just as in determining the meaning of an insurance policy, the provisions of the Insurance Company Law must be read into the policy in interpreting the insurance contract, so also, in our judgment, the terms and provisions of the Act of 1917 and its amendments establishing the public school employes' retirement system are incorporated into and constitute the essential provisions of plaintiff's contract. Cf. Neel, Insurance Commissioner, v. Williams et ux., 158 Pa. Superior Ct. 478, 483 (1946) ; 44 C. J. S. 1214, §302; 1 Couch, Insurance, §150; Commonwealth of Pennsylvania ex

rel. Chidsey v. The Urban Mutual Fire Insurance Company of Pennsylvania, 72 D. & C. 123 (1900). We must then look to the provisions of the statute to determine the validity of plaintiff's contention that she held a contract, executory in nature, that entitled her to have her retirement benefits calculated according to the mortality table in effect when she entered the system.

Section 14(3) of the Act of 1917, as amended, 24 PS §2135, makes provision for superannuation retirement as follows:

"3.. On retirement for superannuation a contributor who is an employe shall receive a retirement allowance which shall consist of:

"(a) An employe's annuity, which shall be the actuarial equivalent of his or her accumulated deductions; and

"(b) A State annuity of one one-hundred-sixtieth (1/160) of his or her final salary for each year of service; and

"(c) In addition thereto, if a present employe, a further State annuity of one one-hundred-sixtieth (1/160) of his or her final salary for each year of prior service, as certified to said present employe in the certificate issued to him or her by the retirement board under the provisions of section eleven of this act."

It is to be observed that this section of the act provides that on retirement a contributor who is an employe shall receive an employe's annuity which shall be the actuarial equivalent of his or her accumulated deductions. In our judgment, under the plain meaning of this language, the actuarial equivalent of the employe's deductions is to be determined upon retirement. And since plaintiff bases her claim upon an executory contract, and since the statute forms the essential part of her contract, then her agreement was that upon her

retirement such actuarial determination was to be made.

An actuary is one whose profession is the calculation of insurance risks and premiums, and a person skilled in mathematical problems involved in making such calculations. The term "actuarial equivalent", as used in section 14, clearly has reference to the mathematical calculations to be made on the basis of the employe's accumulated deductions. The efficacy of such calculations is their accuracy based upon the professional opinion and skill of the actuary.

We think the term "actuarial equivalent", as used in section 14 of the act, means calculations made at retirement according to the best actuarial information and tables then available to the actuary. Accurate calculations could not be made at that time on the basis of tables previously determined by the board and its actuaries to be invalid. We think, then, that plaintiff by her own contract agreed that the actuarial equivalent of her deductions was to be determined upon her retirement, and that the determination of such actuarial equivalent necessarily, in the interest of accuracy, requires the use of the mortality tables then recognized by the board as being applicable at that time.

It is important to observe also that section 15 of the Act, 24 PS §2137, makes provision for four options which plaintiff could exercise upon her retirement, all of them involving actuarial values. Some of these options involve annuities payable for life. The term "actuarial equivalent" is used in and is applicable to the provisions of section 15. The intendment of the act is that in allowing an employe to exercise these options, actuarial values at the time of retirement must be established, and this would necessarily require the use of the best information then available, namely, the tables that in the opinion of the actuaries reflect

existing conditions. Section 15, in our opinion, must be read with section 14 and indicates that currently valid tables are to be used to determine actuarial values at the time of retirement.

The new mortality tables were adopted September 17, 1934, pursuant to the mandate contained in section 4, par. 7, of the Act of 1917, sec. 3, as amended, 24 PS §2094, which reads as follows:

"In the years nineteen hundred twenty-one and nineteen hundred twenty-four, and in every fifth year thereafter, the actuary of the retirement board shall make an actuarial investigation into the mortality and service experience of the contributors and beneficiaries as defined in this act, and shall make a valuation of the various accounts created by this act, and, on the basis of such investigation and valuation, the retirement board shall—

"(a) Adopt for the retirement system one or more mortality tables and such other tables as shall be deemed necessary;

"(b) Certify the rates of deduction from salary necessary to pay the annuities authorized under the provisions of this act; and

"(c) Certify the rates of contribution, expressed as a percentage of salary of new entrants at various ages which shall be made by the Commonwealth to the Public School Employes' Retirement Fund and credited to the contingent reserve account." (Subsec. 7 amended September 26, 1951, P. L. 1450)

The record here indicates that the investigations mentioned in the above section have from time to time been made by the board's actuaries, and that the change in mortality tables made on September 17, 1934, became effective October 1, 1934. It appears that the board stated in its fifteenth annual report that while "the financial condition of the retirement system is

very satisfactory" there is an unfavorable element in "the trend toward a lower mortality rate among teachers retiring on account of superannuation." The provisions of the act clearly make it the duty of the board not only to make these actuarial investigations, but to be vigilant in the preservation of a sound financial structure for this system.

The increased longevity of teachers necessaily required, if the funds of the system were to be kept on a sound financial basis, that new tables of mortality be adopted and that at retirement those tables be used in calculating the annuities payable to employes.

Section 8, par. 6, 24 PS §2119, of the act provides that the rate of deduction from contributors' salaries shall be on a percent basis and shall be based on such mortality and other tables as the retirement board shall adopt. The rate of contribution under this section is made constant and this determination is made when the employe enters the system. There is no provision in the act, however, specifying that mortality or other tables in use when the employe enters the system must be used upon retirement to determine the employe's retirement allowance payable as an annuity throughout the life of the retired employe. The plain language of the statute is clearly to the contrary.

The important point to bear in mind is that by making these actuarial computations on the basis of currently valid tables, plaintiff is not thereby receiving less money than she is entitled to. The amount contributed is simply spread over a longer period of time based upon her reasonable expectancy. Actually, if plaintiff's contention were to prevail here, she would receive as an annuity a greater amount than she had paid in on the basis of the currently valid mortality tables. If the contention of plaintiff were to prevail, the financial soundness of the retirement funds could

be impaired, and the board would be powerless to prevent such impairment. We believe the intendment of the statute to be that the board has the power to act in the matter of changing the mortality tables so as to maintain the financial integrity of the retirement system.

Plaintiff contends that in adopting the mortality tables in 1934, the board took unilateral action that affected and impaired her rights under her contract when she entered the system. It is plaintiff's contention that under this section any change in mortality tables would operate prospectively, but could not operate to affect employes who had entered the system prior to the adoption of the new tables. In our view, this action by the board in the adoption of the new tables was not unilateral action because the statute provided that this could be done and plaintiff's contract then also provided that it could be done.

Plaintiff's contention, that upon her retirement defendant must use the mortality tables adopted at the time she became an entrant into the system in order to determine her employe's annuity, is based upon the proposition that when she entered the system she acquired certain vested rights upon her retirement entitling her to have retirement privileges computed according to these tables. This contention overlooks the proposition that her rights at entrance into the system were inchoate only and that she acquired no vested rights until the conditions for her retirement were fulfilled. As stated in Bausewine v. Philadelphia Police Pension Fund Association, supra, at page 270:

". . . Appellee's right to the retirement pay provided by the by-laws of the association became vested at the moment that he completed the required time of service and met the conditions imposed by law and the articles of the Association; it could not thereafter be

divested or altered by municipal legislation or otherwise."

The statute and plaintiff's contract required that upon retirement actuarial values were to be determined with respect to the contribution she had made to the employes' annuity savings account and transferred to the employes' annuity reserve account. The mortality tables and other tables used for determining these actuarial values must certainly be those tables at that time determined by the actuaries to be applicable to existing conditions. Any computations based upon mortality tables rejected in 1934 because from experience ratings they did not properly reflect life expectancy would be actuarially unsound, since they would not be made on the basis of conditions existing at the time of the computation.

We, therefore, conclude that it was proper and lawful for defendant to make use of the mortality tables adopted on September 17, 1934, in order to determine the actuarial equivalent of the deductions that had been accumulated for her benefit as a contributor, and to establish the correct amount of her employe's annuity; and that the computation of her employe's annuity in the amount of $426.38, based upon her contributions, was in accordance with the provisions of the statute. In view of these conclusions, it is unnecessary to discuss the Commonwealth's defense of laches and the statute of limitations.

For these reasons, plaintiff's prayer for relief must be denied and accordingly we enter the following

*Order*

And now, January 18, 1954, it is ordered, adjudged and decreed that plaintiff's complaint be and the same hereby is dismissed and judgment is entered for defendant.